**AMERICAN PUBLIC HEALTH ASSOCIATION and National Council of Senior Citizens, Plaintiffs,**

v.

**John G. VENEMAN, Acting Secretary of the Department of Health, Education and Welfare, and Charles Edwards, Commissioner of the Food and Drug Administration, Defendants.**

**Civ. A. No. 1847–70.**

United States District Court, District of Columbia.

Aug. 23, 1972.

finds . . . (3) on the basis of new information before him with respect to such drug, evaluated together with the evidence available to him when the application was approved, that there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling thereof. . . .

Section 355 relates solely to non-antibiotic drugs. Under § 357(h), antibiotic drugs may be ordered withdrawn when

(2) the Secretary finds, on the basis of new information with respect to such drug evaluated together with the information before him when the application under section 355 of this title became effective or was approved, that there is a lack of substantial evidence (as defined in section 355(d) of this title) that the drug has the effect it purports or is represented to have under such conditions of use.

The term "substantial evidence," as used in §§ 355(e) and 357(h) means

evidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof. 21 U.S.C. § 355(d) (1970).

Bruce J. Lerris, Washington, D. C., for plaintiff.

Thomas A. Flannery, U. S. Atty., Joseph M. Hannon, Mary E. Folhard, Asst. U. S. Attys., Washington, D. C., for defendants.

## MEMORANDUM

BRYANT, District Judge.

### I

Before the court are the cross-motions of the parties for summary judgment. Because of the complex nature of this case, a detailed recitation of the facts is appropriate.

In 1962, the Congress amended the Food, Drug, and Cosmetic Act of 1938 to require that all drugs on the market be proven effective for their suggested use.[1] Under 21 U.S.C. § 355(e) (1970),

The Secretary shall, after due notice and opportunity for a hearing to the applicant, withdraw approval of an application with respect to any drug under this section if the Secretary

Under the terms of P.L. 87–781, Section 107(c)(3)(B), the effectiveness requirement did not take effect until October 10, 1964, two years after enactment of the statute. The Food and Drug Administration in 1964 promulgated regulations to require the drug manufacturers to report whether approved drugs were still being marketed in conformity with the conditions for which they had

---

1. P.L. 87–781. The pertinent amendments are codified in 21 U.S.C. §§ 355, 357 (1970 ed.).

been approved and to submit scientific data in support of any claims in promotional material which departed from the approved labeling. The drug industry failed to comply, and litigation instituted in the District of Delaware by the Pharmaceutical Manufacturers Association challenging the legality of the regulation was still pending as of September 3, 1970.[2]

In 1966, Dr. James Goddard became Commissioner of the FDA and began to move ahead with efficacy studies of the various drugs. In July of 1966, a contract with the National Academy of Sciences-National Research Council was signed, whereby the NAS–NRC was to review the efficacy of all drugs which had been given FDA approval from 1938 to 1962. The FDA then published orders in the Federal Register requiring the drug manufacturers to submit certain information regarding each approved drug, including references to evaluations of the effectiveness of the drug. The purpose was to permit the manufacturers the "opportunity to identify the best available evidence which they believed supported the claims made for the drug."[3] After several extensions, the manufacturers were required to submit their information by July 1, 1967.[4] NAS–NRC began submitting its first reports on October 11, 1967, and submitted the last report on April 15, 1969; there were 2,824 reports submitted, covering approximately 3,700 drugs manufactured by 237 companies.

In January, 1968, the FDA began implementation of the NAS–NRC reports. The procedure adopted has been to evaluate each report and to release it to the public only after the FDA evaluation is completed. When the FDA completes its evaluation of an NAS–NRC report, an announcement is made in the Federal Register that the FDA has concluded that the drugs involved are "effective," "probably effective," "possibly effective," or "lack substantial evidence of effectiveness"; the first three classifications are the same as those used in the NAS–NRC reports, but the last seems to be an FDA substitution for the NAS–NRC classification "ineffective."

After announcing the classification of a drug in the Federal Register, the FDA affords the drug manufacturer a period of time to provide additional data to the FDA in every case where the drug is classified as anything other than "effective." The manufacturer is given 12 months or 6 months where the drug is listed as probably or possibly effective, respectively,[5] and 30 days where the drug is classified as lacking substantial evidence of effectiveness.[6] During this time period, the manufacturer is permitted to continue marketing the drug. If, at the end of the interim period, no studies have been undertaken by the manufacturer, or if the studies do not provide substantial evidence of effectiveness, procedures are supposed to be instituted to withdraw approval of the drug pursuant to 21 U.S.C. § 355(e).[7]

When the Secretary finds that a drug lacks substantial evidence of efficacy, §§ 355(e) and 357(h) & (f) require that there be an opportunity for a hearing. 21 C.F.R. § 130.27 (1971) prescribes the procedure for withdrawal of non-antibiotic drugs. The Secretary is required to notify the holder of a new drug application of an opportunity for a hearing on the proposed withdrawal, and notice must be published in the Federal Register. The manufacturer has 30 days then to avail himself of the hearing

---

2. Affidavit of Charles C. Edwards, filed September 4, 1970, p. 3.

3. Affidavit of Charles C. Edwards, *supra*, Note 2, pp. 5–6.

4. It should be noted that this date is nearly three years after the effective date of §§ 355 and 357.

5. See Conditions for Marketing New Drugs Evaluated in Drug Efficacy Study, 35 Fed.Reg. 11273 (1970).

6. See, e. g., 35 Fed.Reg. 12423 (1970).

7. See Conditions for Marketing New Drugs, *supra*, Note 5. It is unclear from the record whether this procedure has been applied to antibiotics.

opportunity.[8]  If the manufacturer fails to avail himself of the opportunity for the hearing, the FDA may enter a final order withdrawing the drug.[9] When a manufacturer desires to have a hearing, he must respond within the 30 days after notice is published, giving reasons, supported by an analysis of clinical and investigative data which he would present at the hearing in support of his opposition to withdrawal of the drug.[10]  The FDA may refuse a hearing and withdraw the drug where the data presented is insufficient on its face to support a claim of effectiveness.

Though the language of 21 C.F.R. § 130.14(b) (1971) is ambiguous, it appears that a hearing, when permitted, must commence as soon as practicable. After the hearing the examiner submits tentative findings of facts and an order which becomes final if no objection is made within 20 days thereafter.  The Commissioner of the FDA then issues the final order.  The procedure followed in the cases of antibiotic drugs is contained in 21 C.F.R. § 146.1 (1971) and is sufficiently similar as to not require separate discussion.

## II

■  As a preliminary matter, the question of jurisdiction is quickly resolved.  The defendants contend that the matters in controversy are within the agency's discretion and are thus subject neither to mandamus nor judicial review.  The court has considered both the allegations of the complaint and the merits and concludes, as will be shown later in this memorandum, that the issues presented do not deal with agency discretion and are subject to review under the Administrative Procedure Act.[11]

## III

The plaintiffs' complaint challenges in several respects the manner in which the FDA is administering Sections 355 and 357.

## A.

■  First the plaintiffs assert that the FDA practice of granting manufacturers time to bolster the record regarding a drug's effectiveness, after the FDA has publicly concluded that a drug is less than effective, is a violation of the statutory mandate.  The statute states unequivocally that

> The Secretary *shall* . . . withdraw approval of any application with respect to any drug under this section if the Secretary finds . . . that there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed . . . 21 U.S.C. § 355(e) [Emphasis added].

While § 355(e) pertains only to non-antibiotic drugs, 21 C.F.R. § 146.1(g) (1) (1971) declares that

> No regulation providing for the certification of any batch [of antibiotic drugs] . . . and no existing regulation will be continued in effect unless it is established by substantial evidence that the drug will have such characteristics . . . to adequately insure safety and efficacy of use.

Thus it could not be clearer that the Secretary *must* begin the procedures to withdraw a drug when he concludes that there is no substantial evidence of efficacy.  The defendants contend that the many announcements which have been published in the Federal Register regarding FDA conclusions about the efficacy of various drugs are not findings by the agency[12] and that the FDA is "not required by law to notice the cases [where a drug has been found less than effective] or press them to hearing immediately upon its announcement of the NAS–NRC findings and its concurrence.

---

8.  21 C.F.R. § 130.14(a) (1971).

9.  21 C.F.R. § 130.15 (1971).

10.  21 C.F.R. § 130.14 (1971).

11.  5 U.S.C. §§ 701–706 (1970).

12.  Defendants' Reply Brief, p. 2.

It has discretion in the selection of cases to notice for hearing."[13] This argument is unpersuasive in view of the clear language of the statute and regulations and the Congressional intent to rid the marketplace of ineffective drugs.[14]

## B.

◼ The plaintiffs' second claim is that once the FDA commences the procedure outlined in the statute or regulation for withdrawing a drug, it fails to adhere to those procedures. Plaintiffs assert, and the defendants do not refute it, that for many drugs the FDA has published in the Federal Register the required notice of an opportunity for a hearing and that the manufacturers have failed to avail themselves of the opportunity for the hearing within the required 30 days; nevertheless the FDA has failed to withdraw these drugs from the market. In these circumstances, the withdrawal is both required by the statute and purely a ministerial duty, and failure to withdraw constitutes agency action unlawfully withheld.

◼ In addition, plaintiffs contend that where drug manufacturers have requested a hearing, such hearings have been a long time in coming. They cite as examples two drugs where no hearing had been scheduled at the time the plaintiffs filed their memorandum, even though the manufacturers had requested hearings one and a half years before. Indeed, this situation was commented upon unfavorably in United States v.

Pharmaceutical Corporation v. Secretary, HEW, No. 24,900, slip op. at 14 (D.C.Cir. August 14, 1972). As the court reads 21 C.F.R. § 130.14(b), a hearing on withdrawal of a new drug application is to be scheduled as soon as practicable, and while such a provision confers some agency discretion in scheduling the hearing, interminable delay obviously is not contemplated.

## C.

◼◼ Plaintiffs also claim that the FDA has failed to exercise its authority to immediately suspend drugs which present an imminent hazard to the public health.[15] The invocation of this emergency procedure is a matter which is peculiarly one of judgment, and while the agency has been, perhaps, overcautious on occasion in view of the lengthy delays in removing drugs from the market, the record before the court is inadequate to support a finding of an abuse of discretion.

## IV

When the final motion paper was filed in this case on December 1, 1970, less than half of the NAS–NRC reports had been evaluated and published.[16] In his affidavit filed September 4, 1970, the defendant Commissioner of the FDA stated

In summary, it is expected that all the reports will be released and FDA

---

13. Defendants' Memorandum in Support of Defendants' Motion to Dismiss and for Summary Judgment, p. 20.

14. The court feels compelled to state that even if the statute and regulation did not require immediate action by the FDA to withdraw an ineffective drug, the court would grant mandamus based upon not only the statute, but also the failure of the FDA to adhere, to its regulation declaring that a drug would be withdrawn at the end of a 30 day, 60 month or 12 month period. 35 Fed.Reg. 11273 (1970). See pp. 30–32 of Plaintiffs' Memorandum in Support of Motion for Summary Judgment. Furthermore, the court cannot

understand the solicitude of the FDA for the drug manufacturers in giving additional time to supplement the record when in all cases the manufacturers have been on notice regarding the statute's efficacy requirement for at least four or more years. The hearing procedure provides ample opportunity for drug manufacturers to produce their scientific evidence, when they have any, in opposition to withdrawal.

15. 21 U.S.C. § 355(e) (1970) and 21 C.F.R. § 146.1 (1971).

16. Defendants' Reply Brief, p. 6, indicates that 1188 out of 2771 NAS–NRC reports have been published.

and Academy findings published prior to July 1, 1971.[17]

In response to the court's inquiry the defendants advised the court on February 2, 1972, that 814 reports still had not been evaluated by the FDA. Of these outstanding reports, 327 had been returned to NAS–NRC for further evaluation in early 1971 and were reported on by NAS–NRC in October, 1971; they are presently being reevaluated by the FDA. In addition, the FDA has advised that the 260 NAS–NRC reports on over-the-counter drugs will not be rated by the FDA (and hence will remain unpublished) because it has announced a new program with regard to over-the-counter drugs.[18] The plaintiffs have protested that the proposed procedures are "enormously elaborate" and will create extensive delay in applying the efficacy requirement to over-the-counter drugs. The court shares this concern, since over-the-counter drugs are purchased without medical advice in most cases, and an NAS–NRC report on over-the-counter drugs indicates that only 25% of all such drugs are effective.[19]

Because the FDA has responsibility in matters which directly and literally affect the nation's health and welfare, it is one of the most important of all Federal regulatory agencies. Its enforcement stance must be well balanced, but nevertheless effective. A timid approach can vitiate whatever protection the Congress has created for the consumer. On the other hand, an overly zealous approach can ruin a drug manufacturer by destroying public confidence in its products. Thus, it is understandable that the agency might have legitimate concern for drug manufacturers who must comply with new statutory requirements, and surely the question of time necessary to adduce new evidence of efficacy is an important consideration in creating an administrative scheme for implementation of the statute.

However, the FDA must remember that it does not stand alone in this regard. At the very outset the Congress also was sensitive to this problem, and allowed a two-year grace period before the 1962 amendments were to become effective. When, as is the case here, the Congress has shown an awareness of a problem and has acted accordingly, it seems inappropriate for an agency to adopt procedures which extend the grace period far beyond that envisioned by the statute, and which effectively stay implementation of the Congressional mandate that drugs in the marketplace be both safe and effective.[20]

■ Based upon the entire record in this case, the court concludes that there is no compelling reason why the remaining NAS–NRC reports should not be immediately released, that it would be an abuse of agency discretion to refuse to make such reports public, and that the court should set a deadline for the FDA to complete its evaluation of all drugs with regard to efficacy.

17. Affidavit of Charles C. Edwards, *supra*, Note 2, p. 12.

18. 37 Fed.Reg. 85 (1972).

19. Id. at 85. The type of intolerable procrastination in the FDA evaluation of NAS–NRC reports has been dramatically evidenced very recently. The FDA has just released for publication an NAS–NRC report on over-the-counter drugs, specifically cold remedies, that was submitted to the FDA three years ago. The report indicates that many of the nation's leading cold medications lack substantial evidence of effectiveness and are subject to withdrawal. Washington Post, July 8, 1972, p. 2.

20. The defendants cite Pfizer, Inc. v. Richardson, 434 F.2d 536 (CA2 1970) and Pharmaceutical Manufacturers Assn. v. Richardson, 318 F.Supp. 301 (D.Del. 1970) as "specifically approv[ing] the procedures adopted by the defendants for the implementation of the NAS–NRC Drug Efficacy Study," but their reliance on these cases is misplaced, since they deal with the validity of FDA regulations regarding the definition of "substantial evidence" and the right to a hearing prior to withdrawal of a drug. Neither case deals with the issues before this court.

Accordingly, the plaintiffs' motion for summary judgment is granted, and the defendants' motion to dismiss and for summary judgment is denied.

Counsel are directed to present an appropriate order.