**CONSUMER FEDERATION OF AMERICA**
**et al., Appellants,**

v.

**UPJOHN COMPANY et al., Appellees.**

No. 8171.

District of Columbia Court of Appeals.

Argued Feb. 26, 1975.

Decided Oct. 7, 1975.

Bruce J. Terris, Washington, D. C., with whom Helen Cohn Needham, Washington, D. C., was on the brief, for appellants.

Max O. Truitt, Jr., Washington, D. C., counsel for Eli Lilly & Co., and Herbert Dym, Washington, D. C., counsel for Upjohn Company, argued on behalf of all appellees. With them on the brief on behalf of the appellee Eli Lilly & Co. was Douglas G. Thompson, Jr., Washington, D. C. Also on the brief were E. Edward Bruce and Richard F. Kingham, Washington, D. C., on behalf of appellee Upjohn Company, and Andrew J. Kilcarr and Donald J. Frickel, Washington, D. C., on behalf of appellees Wyeth Laboratories and American Home Products Corporation. Peter A. Bell, Washington, D. C., also entered an appearance for Eli Lilly & Co.

Before NEBEKER, YEAGLEY and HARRIS, Associate Judges.

YEAGLEY, Associate Judge:

Appellants, the Consumer Federation of America and the National Council of Senior Citizens, filed a similar cause of action against each of three different drug companies on behalf of themselves, their members and all other purchasers of certain allegedly ineffective drugs to recover the money spent by purchasers of such drugs and to obtain punitive damages.[1] The appellants assert that the subject drugs were sold by the defendant companies after the defendants knew or should have known that the drugs were ineffective. An individual plaintiff, an appellant here, joined the organizational plaintiffs in the case against the Upjohn Company and seeks similar relief.

In 1962, the Federal Food, Drug, and Cosmetic Act was amended[2] to require that manufacturers demonstrate by substantial evidence the effectiveness, as well as the safety, of drugs before obtaining marketing approval from the Food and Drug Administration (FDA). Drug manufacturers were given two years to comply with the new statutory requirements but this deadline was extended several times until, in 1967, the FDA began the process of removing from the market drugs which had not been established as effective. Appellants assert that, as a result of these procedures, the FDA found that the manufacturers had failed to prove by substantial evidence the effectiveness of any of the drugs involved in this case.[3]

The suits were originally filed in the United States District Court for the District of Columbia, where appellants contended that the sales of the specified drugs violated the Federal Food, Drug, and Cosmetic Act, in that the drugs' labels asserted that they would have certain beneficial effects when, in fact, they did not; that the drug mislabelling violated the Federal Trademark Act;[4] and that the misrepresentations which the drug companies had made in connection with the sales of these drugs entitled the purchasers to recover damages under federal and local common law products liability, warranty, negligence

---

1. The causes of action do not rest on any allegation that the drugs were harmful or marketed without FDA approval. They were consolidated at trial for disposition. This is a joint appeal from the order dismissing the three complaints.

2. 21 U.S.C. § 301 (1970) et seq. The relevant amendments are found primarily in 21 U.S.C. § 355(b) and (d)(5) (1970).

3. The primary evaluation of the data presented by the manufacturers was made by the National Academy of Sciences—National Research Council (NAS–NRC) under a 1966 contract with the FDA.

4. 15 U.S.C. § 1051 (1970) et seq.

and fraud causes of action.[5] The District Court dismissed the complaints insofar as they arose under the two federal statutes and accordingly transferred the cases to the Superior Court of the District of Columbia. The Superior Court subsequently dismissed the transferred complaints as to the plaintiff organizations for failure to state a claim upon which relief could be granted on the ground that the organizations lacked standing to sue and dismissed as to the individual plaintiff on the ground of *forum non conveniens*. We affirm both rulings of the Superior Court.

I

■ The trial court held that the plaintiff organizations, not having purchased any of the drugs involved, were not themselves injured and that the organizations did not fall under any of the exceptional situations in which organizations are allowed to sue on behalf of their members. The trial court also felt that prosecution of this suit would be further complicated by the necessity of interpreting and applying various state laws to the common law causes of action of the numerous purchasers of such drugs.

Appellants attack the basic premise of the trial court ruling by asserting that it is the rule rather than the exception that organizations can represent their members in bringing civil suits. They cite in support of this assertion statements in such cases as *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and *Arkansas Education Association v.*

*Board of Education*, 446 F.2d 763, 766 (8th Cir. 1971), that organizations may sue on behalf of their injured members, arguing that these statements of standing are made without qualification and are not limited by the type of relief sought.

However, we find that the trial court's ruling that the appellant organizations do not have standing to sue for damages on behalf of their members is strongly supported by the Supreme Court's recent opinion in *Warth v. Selden*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).[6] There the Court observed that the standing doctrine has two distinct dimensions: first is the constitutional limitation on federal jurisdiction of justiciability, that is, "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III", and second is a prudential limitation on the exercise of jurisdiction as a matter of judicial self-governance, that is, a limitation on the "class of persons who may invoke the courts' decisional and remedial powers." *Id.* at 2205. Under the judicial prudence arm of the standing doctrine, courts have generally limited the cases which they will hear to those in which the plaintiff is the real party in interest. In the words of the *Warth* Court

> the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. [95 S.Ct. at 2205.]

In considering in *Warth* the standing of the intervenor Rochester Home Builders

5. We note that "any false advertisement . . . which is likely to induce directly or indirectly, the purchase in commerce of . . . drugs" is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 52(a)(1) (1973). It has been held, however, that consumers may not bring a private action to enforce such provisions in the Act since the Federal Trade Commission has exclusive enforcement authority. *Holloway v. Bristol-Myers Corp.*, 158 U.S.App.D.C. 207, 485 F.2d 986 (1973). In that case the complaint alleged that the defendant's representation

that *Excedrin* is a more effective pain relieving agent than common aspirin was false, deceptive and misleading and that in reliance thereon consumers had been induced to purchase *Excedrin* in preference to other equally effective but less expensive analgesics to their pecuniary loss.

6. Appellants assumed and we agree that the rules of standing as applied in the federal courts are substantially the same as those which govern the instant case in Superior Court.

Association, Inc. (Home Builders),[7] an association of firms engaged in residential construction, the Court held that Home Builders did not have standing to sue the town of Penfield to recover the lost potential profits[8] of some of its members who had been deprived of the opportunity to build low- and moderate-cost housing in the area as a result of Penfield's exclusionary zoning law and the arbitrary refusal of Penfield officials to grant appropriate zoning variances. The Court's analysis of this issue merits quotation in full:

> [T]o justify any relief the association must show that it has suffered harm, or that one or more of its members are injured. *E. g., Sierra Club v. Morton, supra.* But apart from this, whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind. *E. g., National Motor Freight Traffic Assn. [v. United States, 372 U.S. 246 [83 S.Ct. 688, 9 L.Ed.2d 709] (1963)].* See *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Cf. Fed.Rule Civ.Proc. 23(b)(2).

The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. Home Builders alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such Moreover, in the circumstances of this case, the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf. [95 S. Ct. at 2213–14.]

We see no reason why the foregoing principles enunciated in *Warth* should not be made equally applicable to the courts of the District of Columbia which were established pursuant to Article I of the Constitution.

The appellant organizations have expressly recognized that they have not purchased any of the drugs involved and have not been injured in fact. As was the case with Home Builders in *Warth,* the monetary damages incurred by the members of the appellant organizations are individualized and vary in amount. Individualized proof would be necessary to establish each particular purchase and the resulting damages incurred by each member, the claims of whom the appellant organizations attempt to lump into one cause of action. A further complication present in the instant case is that the drug sales took place throughout the country and therefore the individual damage claims would be governed by the common law of each respec-

---

7. Two other citizens associations, asserting interest in low-cost housing on behalf of their members, were also denied standing because no concrete connection between the challenged zoning ordinance and the inability of the citi-zen members to find low-cost housing was apparent in the allegations of the complaint.

8. Home Builders' standing to seek prospective relief was denied for lack of allegations of specific deprivations to which such relief could apply.

tive jurisdiction.[9] The elements of each cause of action would have to be established separately.

In light of the difficulties presented by such a representative action for damages, the Supreme Court soundly recognized in *Warth*, as did the lower court in the instant case, that representative suits by organizational plaintiffs are more appropriate and feasible when equitable and prospective relief is sought. An award of damages, on the other hand, is based on the rights of the individual in accordance with his proof. Lumping such claims together in a representative action would complicate, rather than simplify, litigation. While there may be cases in which policy considerations would justify conferring standing upon an organization to maintain a suit solely for damages on behalf of its injured members, we find no such considerations in this case and affirm the trial court's dismissal of the organizational plaintiffs on the ground that they lacked standing.[10]

Consistent with our conclusion is *American Patients Association v. Eli Lilly & Co.,* C.A. No. 70–1787 (S.D.Fla. April 26, 1971) (unreported order) in which the American Patients Association, a membership organization, sued Eli Lilly & Co. for damages on its own behalf and on behalf of others similarly situated asserting substantive

causes of action on behalf of others of a similar nature to those advanced here, but not alleging that the organization had suffered any injury. The second amended complaint in that case was dismissed for failure to state a claim upon which relief could be granted on the gounds that the organizational plaintiff had not suffered a legally cognizable injury and was not entitled to sue simply as the representative of a class of consumers who had allegedly been injured.[11] Our conclusion is also consistent with the spirit of Super.Ct.Civ. R. 17(a) which specifies that "[e]very action shall be prosecuted in the name of the real party in interest." The import of our rule is that suits by representative plaintiffs on behalf of the real parties in interest are the exception rather than the rule and should only be allowed when the real parties in interest are identifiable and the *res judicata* scope of the judgment can be effectively determined.

By this holding we do not dismiss an otherwise viable action on the basis of a legal technicality. Even if standing were conferred upon the appellants, we foresee what appear to be insurmountable hurdles to the successful maintenance of this suit. We have serious doubts that a class action would be appropriate or manageable in this case under any section of Super.Ct.Civ.R. 23 in light of the many uncommon ques-

9. While appellant seeks to avoid this problem by having us create a body of federal common law which can uniformly govern all of the individual claims involved, we hold at page 731, *infra*, that these actions would be controlled by local common law.

10. It is noteworthy in this regard that the public has already gained some relief to protect it against the sale of ineffective drugs from the decision in *American Public Health Ass'n v. Veneman*, 349 F.Supp. 1311 (D.D.C. 1972), in which the National Council for Senior Citizens, in conjunction with the American Public Health Association, successfully sought court-set deadlines by which the FDA must complete its efficacy evaluations of all subject drugs.

11. Earlier that court had also dismissed for similar reasons the first amended complaint

brought on the organization's behalf and on behalf of a class of consumers and purchasers. Appellants attempt to distinguish that case by asserting that the American Patients Association did not attempt to rely on any injury of its members to attain standing to represent the nationwide class of purchasers. While this assertion is disputed by appellees, we think that it is irrelevant for the purposes of the instant case. The trial court's dismissal there at least stands for the general proposition that before one may sue for damages on behalf of others—whether the "others" are members of an organization or a class of consumers—he must show injury to himself. *See* text at page 10, *infra*, in which we discount the differences between standing to bring a nationwide representative action and a nationwide class action.

tions of law and fact among the various individual claims, the class action notice requirements of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L. Ed.2d 732 (1974), and the difficulty of insuring that a recovery will actually inure to the benefit of the injured class members. *See Warth v. Selden, supra*, 95 S.Ct. at 2213–14; *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005, 1018 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). While appellants did not argue the class action issue per se, it formed a part of the three complaints and at oral argument appellants noted that it is an issue to be resolved by the trial court on remand. The distinctions between a "representative action" brought by a national organization suing for damages on behalf of its members and a "class action" brought by that same organization on behalf of its members and others similarly situated are, at least in this case, largely transparent; the factors which should be considered in determining the propriety of each are similar.[12]

II

In the *Upjohn* case, the two plaintiff organizations were joined by an individual plaintiff, Huron Marmon, who is a resident of Texas and who allegedly purchased $250 worth of one of the drugs involved in this litigation. Appellee Upjohn moved to dismiss plaintiff Marmon's complaint on the ground of *forum non conveniens*. The trial court granted appellee's motion, citing five factors in support of its ruling:

"(1) Plaintiff is not a resident of the District of Columbia.

"(2) Defendant Upjohn is not a resident of the District of Columbia and consents to a suit in the state in which plaintiff resides.

"(3) None of the alleged transactions occurred in the District of Columbia.

"(4) Witnesses are not uniquely available in the District of Columbia.

"(5) Resolution of the causes of action would require this Court to apply foreign law, which could better be determined and applied in the foreign jurisdiction."

It is well settled that the defendant has the burden of proof in a motion to dismiss based on *forum non conveniens* and must overcome a strong presumption in favor of the plaintiff's choice of forum. *See Dorati v. Dorati*, D.C.App., 342 A.2d 18, 20 (1975). However the trial court need not always respect the plaintiff's choice of forum. *District-Realty Title Insurance Corp. v. Goodrich*, D.C.App., 328 A.2d 93, 95 (1974). It is a function of the trial court to weigh the many factors which may be relevant to a claim of *forum non conveniens* to determine if this burden has been met and "its decision will be disturbed only for a clear abuse of discretion." *Dorati v. Dorati, supra* at 20. *See Frost v. Peoples Drug Store, Inc.*, D.C.App., 327 A.2d 810, 813 (1974); *Walsh v. Crescent Hill Co.*, D.C.Mun.App., 134 A.2d 653 (1957). *See also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In the instant case, the trial court had before it all of the *forum non conveniens* arguments which are now presented by the parties on appeal, and appellant Marmon recognizes that the five factors cited by the court in support of its holding

12. In *Florida ex rel. Broward County v. Eli Lilly & Co.*, C.A. No. 70–1703 (S.D.Fla. Aug. 20, 1971) (unreported order) the plaintiff's motion to designate a class of nationwide drug purchasers for damages causes of action similar to those asserted in the instant case was denied. The reasons given for the dismissal included:

[I]f consumers were included in any class, individual questions rather than common questions would predominate and such a class would not be manageable, that the inclusion in any class of non-Florida members would, by involving the law of other jurisdictions, make such a class unmanageable. . . .

are relevant to the resolution of *forum non conveniens* questions. Under the guidelines enumerated by this court in the *Frost* case, *supra,* the trial court's resolution of this issue was plainly within the scope of its discretion and consequently the dismissal of the Marmon complaint must be affirmed.

■ The trial court properly ruled that these causes of action sound in common law contract and tort and would be governed by the local law where each transaction was consummated. As to plaintiff Marmon this would presumably be Texas law, which could be better applied in the local jurisdiction. Appellants seek to avoid this problem by asking this court to fashion a body of federal common law which will govern appellant Marmon's claim, as well as those of each member of the nationwide class of plaintiffs appellant Marmon hopes to represent. Appellants assert that under *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 87 L.Ed. 838 (1943), federal common law applies whenever national uniformity of laws is necessary and, additionally, that Congress intended, in passing the Federal Food, Drug, and Cosmetic Act to protect economic interests, as well as the health, of drug consumers. We note, however, that in dismissing claims very similar to those advanced in the instant case, the court in *State of Florida ex rel. Broward County v. Eli Lilly & Co.,* 329 F.Supp. 364, 365 (S. D.Fla.1971), specifically observed that:

The legislative history of the [Federal Food, Drug, and Cosmetic] Act indicates that an express provision for a private

right of action for damages [13] was included in an early version of the bill but was omitted from all later versions after being attacked on the ground that it would create an unnecessary federal action duplicative of state remedies. [Footnote with citations omitted.]

The logical conclusion from this is that Congress considered but rejected the propriety of setting up a nationally uniform law for such private damage causes of action. We conclude that the creation of a federal common law damages remedy under the Federal Food, Drug, and Cosmetic Act is not necessary to the enforcement of appellants' asserted claims and that the cause of action alleged here is of a kind that traditionally has been governed by state law. Since the landmark case of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the instances in which the courts have created federal common law have been "few and restricted." *Wheeldin v. Wheeler,* 373 U. S. 647, 651, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963).[14] The case before us does not fall into that narrow category.

The trial court correctly viewed appellant Marmon's complaint as presenting a controversy between two non-residents [15] concerning a transaction which took place far from the District of Columbia and which would be controlled by the common law of a foreign jurisdiction. It is in the public interest to have such cases tried in a forum at home with the state law which will govern the case and close to the sources of proof concerning the transaction. It is well settled that a court should

13. Section 24 of the earlier draft provided: "A right of action for damages shall accrue to any person for injury or death proximately caused by a violation of this Act." *Hearings on S. 1944 Before a Subcomm. of the Comm. on Commerce United States Senate,* 73d Cong., 2d Sess. 10 (1933). In amendments proposed by a trade association it was noted: "XII. Proposed amendment. *Section 24.*—Strike out this section in toto. Comment: This Act should not attempt to

modify or restate the common law with respect to personal injuries." *Id.* at 403. Similar comments were made by other witnesses. *Id.* at 114, 431 and 444.

14. *See generally* C. Wright, Law of Federal Courts § 60 (2d ed. 1970).

15. The only District of Columbia residents involved in this action are the attorneys.

consider such factors in deciding a *forum non conveniens* issue. *See Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 508–09, 67 S. Ct. 839; *Frost v. Peoples Drug Store, Inc., supra* at 814.[16]

Appellant Marmon contends that the sources of proof in the instant case are almost exclusively located in Washington, D.C., because, according to appellant the findings of the FDA conclusively establish that the drugs involved are "ineffective for any medical purpose or, at the very least, are sufficient to carry appellant's burden of proof" and that the act of placing such drugs on the market itself constitutes a misrepresentation sufficient to support their damage claims.[17]

Appellee Upjohn, on the other hand, asserts that an evaluation of appellant Marmon's common law claims of fraud, misrepresentation and breach of warranty will require the examination of a number of Texas witnesses such as the physicians who prescribed these drugs and employees of the Upjohn Company who may have made representations of effectiveness to area physicians or to the general public. Furthermore, appellees argue that the FDA determinations were made largely by consultant scientists and physicians serving under the auspices of the National Academy of Sciences and that these persons reside throughout the country.

It is a function of the trial court to resolve such conflicting representations and determine the type and sources of proof which will be required in the trial of a particular case. The trial court in the instant case found that "witnesses are not uniquely available in the District of Columbia" and we find that this conclusion is fully supported in the record. We are aware of the ambivalence of this finding in that it does not explicitly state that the sources of proof would be more conveniently available in an alternative forum and normally the plaintiff's choice of forum will be honored unless it would be uniquely inconvenient for the trial to be prosecuted there. Reading the different findings together, however, their clear import is that the court concluded that this case would be more appropriately and conveniently tried in the jurisdiction of the plaintiff's residence, where the transaction took place and where the forum court would be familiar with the applicable law.

In agreeing with this conclusion we note that appellant's contention that the appellees' liability can be conclusively established from District of Columbia sources flies in the face of a finding of the trial court which has adequate support in the record. In a subsequent unpublished ruling in the *Broward County* case, *supra,* the court held with regard to substantive issues similar to those raised in the instant case:

It appearing to the Court that the Plaintiff's request to establish Defendants' liability as a matter of law on the basis of certain findings of the Food and Drug Administration (FDA) should be denied because (1) the FDA has made no finding that any Defendant violated the Federal Food, Drug and Cosmetic Act with respect to the marketing of the drugs involved in this action; (2) collateral estoppel is not applicable in this action; and (3) the determinations of the FDA are not dispositive of the issues of common law fraud, negligence and implied warranty which must be decided on the basis of all of the evidence. [*Florida ex rel. Broward County*

---

16. Appellant asserts that this is more than a localized Texas controversy; as a nationwide class action, it affects the whole nation. We have already expressed grave doubts, however, that such a class action would be manageable, particularly after concluding that there is no federal common law foundation upon which such an action could be built. *See* text at page 731, *supra.*

17. The organizational appellants also advance this theory as to liability.

*v. Eli Lily & Co.*, C.A. No. 71–1703 (S. D.Fla. Jan. 28, 1972) (unpublished order).]

In order to establish the elements of her common law claims appellant Marmon would very likely have to prove facts concerning representations and transactions which took place in a foreign jurisdiction. While the FDA findings may constitute relevant evidence as to the effectiveness of the drugs they would not be dispositive of this case. The substantive issues which were before the FDA differ from those which the trial court would have to resolve. There are numerous elements of the common law causes of action concerning which proof would be required which were obviously not before the FDA. We cannot say that the trial court clearly abused its discretion in finding that this trial would be more appropriately held near the situs of the transactions involved.

Having concluded that the trial court was correct in ruling that the organizational plaintiffs lacked standing to sue and that it did not err in applying the doctrine of *forum non conveniens* to the individual plaintiff, the order dismissing the complaints is accordingly

*Affirmed.*