**UNITED STATES of America, Plaintiff–Appellee,**

v.

**ATROPINE SULFATE 1.0 MG. (ARTI-CLE OF DRUG) DEY–DOSE, Defendant,**

and

**Dey Laboratories, Inc., Claimant–Appellant.**

**No. 87–1392.**

United States Court of Appeals, Fifth Circuit.

May 3, 1988.

Harold Hoffman, Cynthia Hollingsworth, Dallas, Tex., and Marc H. Bozeman, Los Angeles, Cal., for claimant-appellant.

Lawrence G. McDade, Washington, D.C., for plaintiff-appellee.

Before WILLIAMS and HIGGINBOTHAM, Circuit Judges, and BROWN,[*] District Judge.

PAUL N. BROWN, District Judge:

Dey Laboratories, Inc. (Dey) appeals from a summary judgment. In granting summary judgment the district court held that the atropine sulfate inhalant manufactured and marketed by Dey is a "new drug" under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–392 (the Act). The district court was correct in holding that as a matter of law "any consensus which may exist regarding the safety or efficacy of [Dey's] ASI is not based upon adequate or well controlled studies," and we affirm.

### I.

At the time this suit was filed, Dey manufactured and marketed a prescription drug known as atropine sulfate inhalant (ASI). The only active ingredient in ASI is atropine sulfate. According to the summary judgment evidence, some physicians prepare diluted atropine sulfate in the form of an inhalant to treat patients suffering from asthma, bronchitis, and chronic obstructive pulmonary disease.

Dey filed a "paper" new drug application (NDA)[1] for ASI with the Food and Drug Administration (FDA) in May, 1983. By September, 1983, Dey was advised informally that the NDA in its then current form would not be approved. Not to be deterred, Dey reasoned that ASI was not a "new drug" under 21 U.S.C. § 321(p),[2] and thus was not subject to FDA regulation.

Dey began marketing its prescription ASI in November, 1983.

On August 23, 1985, the United States filed a complaint for forfeiture of the prescription ASI manufactured by Dey. Dey filed a claim to the seized ASI on September 27, 1985. Subsequently, the United States filed its motion for summary judgment, which was granted by the district court.

### II.

21 U.S.C. § 355(a) prohibits the introduction into interstate commerce of any "new drug" unless approval of an FDA application is effective with respect to such drug.

21 U.S.C. § 321(p) defines "new drug" as:

(1) Any drug ... the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, ...; or (2) any drug ... the composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions.

Stated another way, a drug is *not* a "new drug," and is therefore exempt from regulation under section 355(a), only if such drug both (1) is generally recognized, among experts qualified to evaluate the safety and effectiveness of drugs, as safe and effective for its labeled purposes; *and*

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

1. A "paper NDA" is a procedure published at 46 Fed.Reg. 27396–02 (May 19, 1981) whereby, instead of requiring duplicate studies to be conducted on a drug, the FDA will accept published reports as the main supporting documentation for safety and effectiveness. Since the question before us on appeal is whether ASI is a "new drug" subject to regulation under the Act, the fact that Dey submitted a "paper NDA," as opposed to some other form of new drug application, is of no direct relevance.

2. The relevant text of 21 U.S.C. § 321(p) is set out in part II of this opinion.

(2) has been used to a material extent and for a material time.

The requirement of "general recognition," the first step which Dey must ascend, has previously been addressed in this circuit. In *United States v. An Article of Drug Consisting of 4,680 Pails*, 725 F.2d 976 (5th Cir.1984), the court construes 21 U.S.C. § 321(w), a provision applying to "new animal drugs" which is virtually identical to section 321(p). In that opinion the court notes that " 'general recognition' requires a two-step showing: first, that there is general recognition in fact, *i.e.*, that there is an expert consensus that the product is [safe and] effective; and second, that the expert consensus is based upon 'substantial evidence' as defined in the Act and in FDA regulations." *Id.* at 985. The court goes on to state that "[w]hile general recognition is normally a factual question of whether there is an expert consensus that is based upon substantial evidence, should we find the studies relied upon by [claimant] and its experts as substantial evidence to be conclusively deficient with respect to the statutory and regulatory standards, then summary judgment is proper." *Id.; see also Weinberger v. Hynson, Westcott and Dunning, Inc.*, 412 U.S. 609, 629–30, 93 S.Ct. 2469, 2483, 37 L.Ed.2d 207 (1973) ("In the absence of any evidence of adequate and well controlled investigation supporting the efficacy of Lutrexin, *a fortiori* Lutrexin would be a 'new drug' subject to the provisions of the Act.").

### III.

■ Dey concedes that none of the studies presented to the district court were conducted on the ASI which it was marketing, which it calls "Dey's ASI".[3] Dey contends, however, that it should be allowed to utilize already published scientific studies conducted on atropine sulfate inhalant prepared in the past by others, and that these studies are "substantial evidence" of the safety and effectiveness of Dey's prescription ASI.[4] We cannot agree.

In *United States v. Generix Drugs Corp.*, 460 U.S. 453, 103 S.Ct. 1298, 75 L.Ed.2d 198 (1983), the Supreme Court addresses whether the statutory prohibition against the marketing of a "new drug" without prior approval of the FDA requires a drug company to have a new drug application approved before it may market a generic drug product. In that case, the respondent, Generix Drugs Corp., asserted that its product was not a "new drug", but a copy of a drug which was already on the market and which had been approved by the FDA. Generix argued that "drug" under the Act means "active ingredient", and that, therefore, a product which contained the same active ingredient but different excipients[5] than a previously approved product was essentially the same "drug". The Court rejects this argument, holding that "[s]uch a product is therefore a 'new drug,' subject to the requirements of § 505 [21 U.S.C. § 355], until the product (and not merely its active ingredient) no longer falls within the terms of § 201(p) [21 U.S.C. § 321(p) ]." 460 U.S. at 461, 103 S.Ct. at 1302.

*Generix* only governs a limited portion of this case, however. The court in *Generix* does not reach the issue of whether "two demonstrably bioequivalent products, containing the same active ingredients but dif-

---

**3.** The only reference to "Dey's ASI" in the material presented to the court below is contained in American Medical Association, *Drug Evaluations* 414 (6th ed.), which simply provides information on the clinical use of drugs currently being marketed. Dey does not seriously question the lower court's finding that this single reference, standing alone, is insufficient to constitute "adequate and well-controlled studies" under the Act.

**4.** All atropine sulfate prepared by someone other than itself Dey calls "generic ASI." This categorization, which we adopt for purposes of this opinion, should not be misunderstood to mean either that the preparation of "generic ASI" studied by one researcher is identical to the "generic ASI" studied by another researcher, or that any single preparation of "generic ASI" studied is identical to "Dey's ASI." In fact, each researcher prepared her own "generic ASI" at the time she conducted her research.

**5.** *Stedman's* defines "excipient" as "[a] more or less inert substance added in a prescription as a diluent or vehicle or to give form or consistency when the remedy is given in pill form." *Stedman's Medical Dictionary* 496 (5th ed. 1982).

ferent excipients, might under some circumstances be the same 'drug.' " 460 U.S. at 461, 103 S.Ct. at 1302. In addition, because the FDA in *Generix* did not cross appeal from the district court's refusal to grant relief as to certain other drug products, the Supreme Court had "no occasion to pass on the District Court's conclusion that the FDA has the burden of showing a 'reasonable possibility' that a drug product is not bioequivalent to an approved product in order to enjoin distribution." *Id.* at n. 12. Although it does not cite this language from *Generix,* Dey argues that "generic ASI" and Dey's ASI are "uniquely equivalent." This is so, Dey argues, because ASI is administered by inhalation, and such being the case, 21 C.F.R. § 320.22(b)(4) demonstrates as a matter of law that Dey's ASI and "generic ASI" are bioequivalent.

21 C.F.R. § 320.22 provides in pertinent part that:

> (b) For certain drug products the in vivo bioavailability of the drug product may be self evident or not necessary for the product to achieve any of its intended purposes. The Food and Drug Administration shall waive the requirement for the submission of evidence obtained in vivo demonstrating the bioavailability of the drug product if the product meets one of the following criteria: ... (4) the drug product meets both of the following conditions: (i) It is administered by inhalation as a gas or vapor, e.g., a medicinal or an inhalation anesthetic. (ii) It contains an active drug ingredient or therapeutic moiety in the same dosage form as a drug product that is the subject of an approved full new drug application.

In essence, Dey's argument is that this regulation constitutes a judicial admission by the FDA that "inactive ingredients are of no consequence to the clinical performance of [inhalation solutions]." Dey's Brief at 16. Clearly, this is not so.

To begin with, even by its own terms the regulation does not bind the FDA because "generic ASI" is not "a drug product that is the subject of an approved full new drug application" as required by (ii). Secondly, this regulation only waives the submission of in vivo bioavailability data. We cannot conclude from this limited waiver that, as a matter of law, the FDA has admitted that two drug products containing the same "active drug ingredient or therapeutic moiety in the same dosage form" regardless of accompanying inactive ingredients, are not just bioequivalent, but also legally and factually equivalent for all purposes. Finally, and perhaps most importantly, the present case does not involve a product seeking to "piggyback" another product already approved by the FDA, but a product seeking to "piggyback" the *studies* conducted on separate products which have not been approved by the FDA. Even assuming that (1) the *Generix* opinion envisions bioequivalency sometimes being a fact question for the district court,[6] and (2) Dey created a fact question in the court below on the issue of its product's bioequivalency to the studied products, the result sought by Dey does not necessarily follow. It is one thing to say that drug "A" may be marketed because a bioequivalent drug, "B," has previously been approved under the Act, but quite another to say that the studies of non-approved drug "B" are sufficient for all purposes in establishing whether a bioequivalent drug "A" is a "new drug" under the Act. Consequently, we will not construe the Act and the regulations promulgated thereunder in the manner suggested by Dey.

As a result, we find as a matter of law that Dey did not present substantial evidence which would support recognition by experts of Dey's ASI as safe and effective. There is no need to address the remaining findings of the district court as they relate to whether there is or is not an expert

---

**6.** Both the First and Second Circuits have discussed the implications of this "open question;" *see, U.S. v. Articles of Drug: 5,906 Boxes,* 745 F.2d 105, 118 n. 20 (1st Cir.1984) (expressing, in dicta, its "reluctan[ce] to conclude that evidence concerning inactive ingredients is unnecessary under the Act"); and *Premo Pharmaceutical Laboratories, Inc. v. United States,* 629 F.2d 795, 803 (2d Cir.1980) (suggesting it improper for a district court to determine the "therapeutic" equivalency of drugs).

consensus that Dey's ASI is safe and effective.

## IV.

 Dey also contends that we should find Dey's ASI not a "new drug" under what it terms the "Bentex exception", *Weinberger v. Bentex Pharmaceuticals, Inc.,* 412 U.S. 645, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973). The Court states in *Bentex* that "it may, of course, be true that in some cases general recognition that a drug is efficacious might be made without the kind of scientific support necessary to obtain approval of an NDA." 412 U.S. at 652, 93 S.Ct. at 2493. The Court stated in the very next sentence, however: "But, as we indicate in *Hynson, supra,* the reach of scientific inquiry under both section 505(d) [21 U.S.C. § 355(d)] and section 201(p) [21 U.S.C. § 321(p)] is precisely the same" (citations omitted) 412 U.S. at 652, 93 S.Ct. at 2493–94.[7] This language is inapplicable to the present case because Dey is not seeking a lower threshold in order to demonstrate the "efficaciousness" of Dey's ASI, but for all purposes of scientific inquiry. Even though the *Bentex* Court was only presented with the question of a drug component's effectiveness, we will not endeavor to expand this "limited but indefinite exception"[8] beyond its own terms, and, under its own terms, we find it inapplicable.

For the foregoing reasons, we conclude that the district court did not err in granting summary judgment.

AFFIRMED.

---

**7.** This statement explicitly supports a result characterized as "kafkaesque" by counsel for Dey at oral argument.

**8.** *United States v. Coli–Trol 80,* 518 F.2d 743, 746 (5th Cir.1975).