**UNITED STATES of America, Plaintiff, Appellee,**

v.

**50 BOXES MORE OR LESS etc., et al., Defendants, Appellees,**

**Appeal of SANDOZ PHARMACEUTICALS CORPORATION, Claimant.**

**No. 89–2166.**

United States Court of Appeals, First Circuit.

Heard May 9, 1990.

Decided July 19, 1990.

---

Daniel R. Dwyer, with whom Peter O. Safir, Kleinfeld, Kaplan and Becker, Mary Morrissey Sullivan, Sullivan, Sullivan & Pinta, and Anne S. Davidson, Sandoz Pharmaceuticals Corp., were on brief for defendant, appellants.

Mary K. Pendergast, Associate Chief Counsel for Enforcement, Food and Drug Administration, with whom Wayne A. Budd, U.S. Atty., Paul G. Levenson, Asst. U.S. Atty., and Margaret Jane Porter, Chief Counsel, Food and Drug Administration, were on brief for appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BREYER, Chief Judge.

The government has seized fifty boxes of a prescription drug called Cafergot P–B Suppository, a drug that contains two active ingredients (caffeine, ergotamine) designed to stop vascular headaches such as migraine and two other active ingredients (pentobarbital, bellafoline) designed to stop nauseous side effects resulting from the first two ingredients. The government has a legal right to seize these products if (1) the drug (which we shall call "CPB") is a "new drug" and (2) its manufacturer, Sandoz Pharmaceuticals, has failed to present "substantial evidence" that the drug is "effective." *See* 21 U.S.C. §§ 355(a, b), 331(d), 334. CPB is a "new drug" unless it is "*g*enerally *r*ecognized, *a*mong experts ... as *s*afe and *e*ffective for use under the conditions prescribed ... in the labeling" (*i.e.*, unless it is what drug regulators call "GRASE"). *See* 21 U.S.C. § 321(p)(1). The district court, concluding that CPB is a "new drug" (*i.e.*, not GRASE) and that Sandoz has not presented "substantial evidence" of its effectiveness, granted the government's motion for summary judgment. *See* 721 F.Supp. 1462 (D.Mass.1989). Sandoz appeals.

Were the law to give ordinary English-language meanings to the statutory words quoted in the preceding paragraph, the record created for summary judgment purposes would strongly support Sandoz.

CPB is not a new drug; Sandoz has sold it successfully for thirty-five years. The anti-headache ingredients in CPB are the same as those in another Sandoz product approved as safe and effective by both the Food and Drug Administration and the National Academy of Sciences, and Sandoz presents evidence that the anti-nausea ingredients in CPB are effective for that purpose. Six experts in the treatment of headache pain prepared affidavits attesting to the general medical consensus, based on published reports and clinical experience, that CPB is safe and effective for the treatment of vascular headache.

■■■■ The law, however, does not give the quoted words their ordinary English meanings. For example, the term "new drug" means "any drug" that is not GRASE. *See* 21 U.S.C. § 321(p)(1). The term "substantial evidence" does not mean what it means elsewhere in administrative law, namely, " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It means "evidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts ...," which "adequate and well-controlled investigations" must satisfy a host of technical scientific requirements, including "a valid comparison with a control" such as an "active treatment trial" that includes "randomization and blinding of patients or investigators" (double-blind studies). *See* 21 U.S.C. § 355(d); 21 C.F.R. § 314.126(b)(2)(iv) (1989). Finally, and perhaps most surprisingly, the exception for drugs "generally recognized as safe and effective" is not an exception at all. In *Weinberger v. Hynson, Westcott & Dunning,* the Supreme Court held that, to qualify as GRASE, a drug must meet the same elaborate, technical, scientific testing requirements that it would have to meet to win approval as a "new drug." The Court wrote that

> the hurdle of "general recognition" of effectiveness requires at least "substan-

tial evidence" of effectiveness for approval of an NDA [i.e., "new drug" application]. In the absence of any evidence of adequate and well-controlled investigation supporting the efficacy of [a drug], *a fortiori,* [the drug] ... would be a "new drug" subject to the [new drug] provisions of the Act.

412 U.S. 609 at 629–30, 93 S.Ct. 2469 at 2483, 37 L.Ed.2d 207 (1973) (footnote omitted). In sum, if we give the relevant statutory terms their special legal meanings, the statute permits the government to seize virtually any prescription drug by showing that the manufacturer has failed to conduct the technical scientific tests needed to obtain FDA "new drug" approval. And Sandoz concedes that neither it, nor anyone else, has tested CPB in the technical scientific manner specified in FDA regulations. This would seem sufficient basis for affirming the district court's grant of summary judgment.

Sandoz argues, however, that we should not accept the legal proposition that a drug is GRASE only if "adequate and well-controlled studies" demonstrate its "effectiveness." This legal proposition amounts to saying, in a sense, that a drug is *exempt* from "new drug" standards only if it *meets* "new drug" standards. Sandoz asks us to hold, instead, that a drug can be "generally recognized ... as ... effective," 21 U.S.C. § 321(p)(1), if the existing evidence to that effect, while not exactly the same as (and perhaps less costly than) technical, "well-controlled" studies, "*is* at least *as scientifically convincing* as 'substantial evidence' consisting of adequate and well-controlled studies." Appellant's Brief at 10 (emphasis added). In support of this argument, Sandoz makes (or might make) several points.

First, its view of the meaning of GRASE makes better sense of the statute. The statute requires "substantial evidence" of "effectiveness" for approval of "new drugs," which it specifically defines as drugs that are not GRASE. *See* 21 U.S.C. §§ 355(d), 321(p)(1). Why would the statute define a category of drugs exempt from the "new drug" requirements and in

the same breath make the exception virtually meaningless by applying the same requirements to drugs that are exempt?

Second, its view arguably avoids certain important policy risks. When Congress amended the drug statute in 1962, adding the requirement that all "new drugs" be proven "effective," approximately 4,000 approved "new drugs," and many times as many close imitations, were already on the market, *see* Drug Amendments of 1962 (Harris–Kefauver Act), Pub.L. No. 87–781, § 102, 76 Stat. 780; *Hynson*, 412 U.S. at 614, 624, 93 S.Ct. at 2475, 2480. Most of these drugs had not been proven effective by "substantial evidence" consisting of "adequate and well-controlled studies." From the perspective of health, should one read the statute to require the FDA to force all such drugs off the market, even those that were generally recognized by doctors as safe and effective (in the plain-English sense of those words) for their indicated use? If so, would those who needed such drugs not then be hurt? From the perspective of cost, should one read the statute to require the FDA to force the makers of all such drugs to undertake the special, expensive testing needed to satisfy the statutory (and FDA regulation) "substantial evidence" requirements, when a long history of safe and effective use (plus other scientific information) indicate both safety and effectiveness? Would the ultimate result not be unnecessary, and significant, increases in the price of drugs? From the perspective of law, should one read the statute to impose a requirement upon existing drugs that few could meet, thereby potentially granting to the FDA, through its discretionary power to enforce the law, the legal authority to pick and choose among existing drugs, keeping some on the market, removing others from the market, for reasons other than failure to meet the "substantial evidence" test?

Third, the Supreme Court itself has not read the law as rigidly as the above-quoted language from *Hynson* suggests. In *Weinberger v. Bentex Pharmaceuticals, Inc.*, a case decided the same day as *Hynson*, the Court wrote,

in some cases general recognition that a drug is efficacious might be made *without* the kind of scientific support necessary to obtain approval of an NDA.

412 U.S. 645, 652–53, 93 S.Ct. 2488, 2493, 37 L.Ed.2d 235 (1973) (emphasis added). Sandoz argues that CPB is the very kind of drug the Court had in mind when it created this so-called *Bentex* exception to *Hynson*.

Fourth, the FDA itself has acted as if the GRASE exception was a genuine exception from the "substantial evidence" requirement. The FDA has promulgated regulations stating that it will certify over-the-counter (*i.e., non*-prescription) drugs as GRASE on the basis of evidence other than "adequate and well controlled studies," even though the statute does not distinguish between prescription and non-prescription drugs. *See* 21 C.F.R. § 330.10(a)(4)(ii) (1989); 37 Fed.Reg. 9469 (1972). Moreover, for at least a dozen years after the 1962 statute was enacted, the FDA took no action against many prescription drugs despite its knowledge that these drugs had not been proven "effective" by "adequate and well controlled studies." *See Hoffmann–LaRoche, Inc. v. Weinberger*, 425 F.Supp. 890, 893 (D.D.C. 1975). And the FDA conceded at oral argument that it still has not acted against some such drugs that were on the market before 1938. Of course, one could not reasonably expect drug manufacturers of several thousand existing drugs suddenly to produce complex, double-blind studies showing "effectiveness" nor expect the FDA to remove all such drugs from the market for lack of such studies. Yet, leaving administrative practicalities aside, the FDA's actions reveal that it did not believe the statute meant to impose the special "substantial evidence" of "effectiveness" requirement on all existing drugs, at least not immediately and not without exception.

Although we have set forth Sandoz's arguments as strongly as we can, we have done so to emphasize that even if those arguments are strong ones, we cannot accept them. For one thing, no drug manufacturer has ever won GRASE status for a drug that lacked "substantial evidence" of

effectiveness by relying on the *"Bentex* exception." The *Hynson* Court, using absolute-sounding language, squarely rejected the argument that a drug could be GRASE despite a lack of "adequate and well-controlled studies" showing effectiveness. The contrary statement in *Bentex* was made in passing in a case presenting a different issue, namely, whether the FDA or the district courts have jurisdiction to determine whether a drug is a "new drug" within the meaning of the statute, *see* 21 U.S.C. § 321(p)(1). This court, in an opinion written by (then senior) Justice Stewart, wrote that *Hynson* "foreclosed" the argument that Sandoz now makes. *See United States v. Articles of Drug ... 5,906 Boxes*, 745 F.2d 105, 116 (1st Cir. 1984), *cert. denied sub nom. Alcon Laboratories, Inc. v. United States*, 470 U.S. 1004, 105 S.Ct. 1358, 84 L.Ed.2d 379 (1985). Other circuits have written in the same vein. *See, e.g., United States v. 225 Cartons ... Fiorinal*, 871 F.2d 409, 418–19 (3d Cir.1989); *Simeon Management Corp. v. FTC*, 579 F.2d 1137, 1143 (9th Cir.1978); *cf. United States v. Atropine Sulfate*, 843 F.2d 860, 864 (5th Cir.1988); *Premo Pharmaceutical Laboratories, Inc. v. United States*, 629 F.2d 795 (2d Cir.1980).

For another thing, the passage of time has erased many of the anomalies growing out of the *Hynson* decision. Since 1972, the FDA, acting pursuant to a court order, has systematically been applying the "adequate and well-controlled studies" requirement to almost all of the drugs that were on the market in 1962. *See American Public Health Association v. Veneman*, 349 F.Supp. 1311 (D.D.C.1972) (court-ordered compliance schedule), *reprinted in* 37 Fed.Reg. 26,623–24 (1972). To change the requirements for GRASE status at this late date may serve little purpose.

Finally, insofar as *Bentex* creates an exception to *Hynson's* interpretation of the statute's language, it would seem appropriate for the agency itself to work out the contours of that exception. *Cf. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The FDA has, in fact, created exceptions for non-prescription drugs, but those exceptions do not apply to CPB.

We do not find the sentence in *Bentex* sufficient to undo settled law, or to overturn our own circuit precedent, a precedent created after the Supreme Court wrote *Bentex* itself. *See Deveraux v. Geary*, 765 F.2d 268, 274 (1st Cir.1985), *cert. denied*, 478 U.S. 1021, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986). If the law is to change, Sandoz must look to the Supreme Court, not to this court, to bring that change about. In our view, the district court correctly applied governing precedent. Its judgment is therefore

*Affirmed.*