**ADAM A. WESCHLER & SON, INC., Appellant,**

v.

**Richard KLANK, Appellee.**

**No. 87–949.**

District of Columbia Court of Appeals.

Argued Nov. 10, 1988.
Decided Aug. 7, 1989.

Harry L. Ryan, Jr., Arlington, Va., for appellant.

Joshua J. Kaufman, Washington, D.C., for appellee.

Before NEWMAN, BELSON, and SCHWELB, Associate Judges.

BELSON, Associate Judge:

On December 7, 1985, appellant, Adam A. Weschler & Son, Inc. (Weschler), conducted a public auction at its place of business in the District of Columbia. Weschler represented one of the items auctioned to be an antique blanket chest circa 1781, with an estimated value of eight to twelve thousand dollars. Weschler published a description of the chest and its estimated value in a catalog prior to the auction. Appellee, Richard Klank, was the high bidder, bidding twenty-one thousand dollars for the chest. Klank alleges that the chest is not as represented by Weschler and therefore refuses to honor his high bid. Weschler filed suit in Superior Court seeking payment by Klank in accordance with

Klank's bid. Thereafter, Klank filed a complaint with the Department of Consumer and Regulatory Affairs ("DCRA") pursuant to the District of Columbia Consumer Protection Procedures Act, D.C.Code §§ 28–3901 through 28–3908 (1981) ("the Act") alleging an unfair trade practice by Weschler. Klank then filed a motion to dismiss pursuant to D.C.Code § 28–3905(k)(4).[1] The trial court granted Klank's motion to dismiss without prejudice, and Weschler appeals. We affirm.

■ Weschler first argues that an auctioneer selling an antique blanket chest to a high bidder in an auction is not a "merchant" as that term is used in D.C.Code § 28–3905(k)(4). D.C.Code § 28–3901(a)(3) defines "merchant" as follows:

"merchant" means a person who does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice[.]

This statutory definition has been further refined in *Howard v. Riggs National Bank*, 432 A.2d 701 (D.C.1981). In *Howard* the court, citing legislative history, held that the term "merchant" is not limited to the actual seller of the goods or services but includes those "connected with the 'supply' side of a consumer transaction." *Howard, supra*, 432 A.2d at 709. It is not clear from the record whether Weschler actually took title to the chest and then resold it at auction, or instead was merely auctioning for a fee items owned by others. Given the broad definition of "merchant," however, this distinction is irrelevant. Weschler, as an auctioneer, is an actor clearly "connected with the 'supply' side" of the transaction.

■ Weschler's second contention is that this transaction does not constitute a "consumer transaction" as that term is used in *Howard, supra*, in defining "merchant." *See Howard, supra*, 432 A.2d at 709. D.C.

Code § 28–3901(a)(2) defines consumer as follows:

"consumer" means a person who does or would purchase, lease (from), or receive consumer goods or services, including a co-obligor or surety, or a person who does or would provide the economic demand for a trade practice; as an adjective, "consumer" describes anything, without exception, which is primarily for personal, household, or family use[.]

Weschler suggests that this definition is adequate, and attempts to resolve its perceived lack of clarity by reference to a dictionary definition of "consumer." This is unnecessary, however, because the Act, as quoted above, provides a further refinement of the definition for the term "consumer" that indicates its breadth. When used in the Act as an adjective, the word "consumer" describes anything, without exception, which is primarily for personal, household, or family use. *Id.*

Weschler further maintains that *Owens v. Curtis*, 432 A.2d 737 (D.C.1981), supports its argument that this transaction is not covered by the Act. Weschler contends that *Owens* stands for the proposition that when the item is purchased primarily for investment and later resale, the transaction is not a "consumer" transaction within the Act. Weschler then argues that this antique blanket chest was purchased as a museum piece for display and/or eventual resale. Weschler, however, points to no facts in the record to support this assertion as to the intended use of the chest. It is entirely conceivable that Klank intended to make personal use of this antique chest in his home or office. Many persons display valuable antiques in their homes or offices and such use falls squarely within the broad "personal, household or family use" definition given by the Act.

Furthermore, in *Independent Communications Network, Inc. v. MCI Telecommunications Corp.*, 657 F.Supp. 785 (D.D. C.1987), the United States District Court

---

1. D.C.Code § 28–3905(k)(4) provides as follows:
    If a merchant files in any court a suit seeking to collect a debt arising out of a trade practice from which has also arisen a complaint filed

with the Office by the defendant in the suit either before or after the suit was filed, the court shall dismiss the suit without prejudice, or remand it to the Office.

for the District of Columbia had occasion to interpret the reach of the Act. While the meaning of the term "consumer" was not directly in issue, *see MCI, supra,* 657 F.Supp. at 788 n. 3 and accompanying text, the Court's overall analysis of the reach of the statute is helpful. The District Court concluded that the Act,

> supplies consumers with a private cause of action against merchants. It is not intended to supply merchants with a private cause of action against other merchants. In no imaginable way could plaintiff ICN be categorized as a consumer.... In the case at hand, ICN describes itself as a corporation engaged "in the interstate sale of long distance telephone services." Complaint at ¶ 1. By its very admission, therefore, ICN is not a "consumer." At most, the case at bar involves a relationship between two entities which are both on the supply side of a consumer-merchant interaction; it does not involve a consumer-merchant relationship itself.

*Id.* at 787–88 (footnote omitted).

 This analysis, as well as the language of the statute itself, indicates that the relevant distinction is one between retail and wholesale transactions. Transactions along the distribution chain that do not involve the ultimate retail customer are not "consumer transactions" that the Act seeks to reach. Rather, it is the ultimate retail transaction between the final distributor and the individual member of the consuming public that the Act covers. Accordingly, it is not the use to which the purchaser ultimately puts the goods or services, but rather the nature of the purchaser that determines the nature of the transaction. If the purchaser is regularly engaged in the business of buying the goods or service in question for later resale to another in the distribution chain, or at retail to the general public, then a transaction in the course of that business is not within the Act. If, on the other hand, the purchaser is not engaged in the regular business of purchasing this type of goods or service and reselling it, then the transaction will usually fall within the Act. Since Klank is not in the regular business of the retail sale of antiques, it follows that the transaction is one within the Act and its protections.[2] Accordingly, the judgment of the trial court is

*Affirmed.*

---

**2.** Appellant has not raised, and therefore we do not address, the question of whether D.C.Code § 1–233(a)(4) (1981) is transgressed by the Act, specifically by § 28–3905(k)(4), which provides for the transfer of the authority to handle certain types of cases from the Superior Court to the Office of Consumer and Regulatory Affairs. *But see District of Columbia v. Sullivan,* 436 A.2d 364 (D.C.1981) (discussing this issue in connection with D.C.Code §§ 40–601 through 40–642 (1986 Repl.), the District of Columbia Traffic Adjudication Act which decriminalized certain traffic violations) and *Dimond v. District of Columbia,* 253 U.S. App. D.C. 111, 792 F.2d 179 (1986) (discussing this issue in connection with D.C.Code §§ 35–2101 through 35–2104 (1988 Repl.), the District of Columbia No–Fault Motor Vehicle Act establishing a $5,000 medical expense threshold for maintaining personal injury suits).