Steven C. TIETSWORTH, David Bratz, John W. Myers, Gary Streitenberger and Gary Wegner, Plaintiffs-Appellants,

v.

HARLEY-DAVIDSON, INC., and Harley-Davidson Motor Company, Defendants-Respondents.†

Court of Appeals

*No. 02–1034. Submitted on briefs November 5, 2002.—Decided March 4, 2003.*

## 2003 WI App 75

(Also reported in 661 N.W.2d 450.)

† Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Jonathan D. Selbin* and *Lisa*

*J. Leebove* of *Lieff, Cabraser, Heimann & Bernstein, LLP*, San Francisco, California; *David J. Bershad, Michael M. Buchman* and *Michael R. Reese* of *Milberg, Weiss, Bershad, Hynes & Lerach, LLP*, New York, New York; *Ted W. Warshafsky* and *Frank T. Crivello, II* of *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, Milwaukee; *Shpetim Ademi, Guri Ademi* and *Robert K. O'Reilly* of *Ademi & O'Reilly, LLP*, Cudahy.

On behalf of the defendants-respondents, the cause was submitted on the brief of *W. Stuart Parsons, Patrick W. Schmidt* and *Kelly H. Twigger* of *Quarles and Brady LLP*, Milwaukee and *Robert L. Binder* of *Foley & Lardner*, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J.   Steven C. Tietsworth appeals from an order dismissing his complaint for failure to state a claim. Tietsworth originally filed a proposed class action lawsuit against Harley-Davidson (Harley) asserting individual and representative claims for: (1) violation of Wis. Stat. § 100.18 (1999–2000)[1], the Wisconsin Deceptive Trade Practices Act ("DTPA"); (2) negligence; (3) strict products liability; and (4) common law fraudulent concealment. He now seeks review of the trial court's dismissal of his fraudulent concealment and DTPA claims; he does not appeal the dismissal of his negligence or strict liability claims. Tietsworth argues that his complaint met all of the elements of both a common law fraudulent concealment and a DTPA violation. Because Tietsworth's complaint did state claims for fraudulent concealment and DTPA

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

violations, the trial court erred in dismissing the complaint in its entirety, and we reverse.

## I. BACKGROUND

¶ 2.    Tietsworth alleged that the 1999 and early-2000 model year Harley motorcycles equipped with TC-88 engines were defectively designed and potentially dangerous due to the TC-88 engines known propensity for premature cam failure, which causes sudden and total engine failure. This failure could result in injuries, including out-of-pocket repair costs, property damage, death, or serious injury.

¶ 3.    Further, Tietsworth alleged that Harley uniformly, intentionally, and actively concealed this known defect from him and the proposed class, and failed to disclose this defect despite its duty to do so. Tietsworth claimed that Harley advertised, marketed, and sold the motorcycles and engines as having been extensively researched, meticulously tested, of premium quality, and fit for the road, while uniformly concealing and failing to disclose that the TC-88 engines were poorly designed, insufficiently tested, and defective. According to Tietsworth, Harley's concealment and failure to disclose the defect in motorcycles with TC-88 engines was intentional, and done for the purpose of inducing Tietsworth and the class to purchase the motorcycles at premium prices.

¶ 4.    Harley denied that the motorcycles and engines were defective. Tietsworth further alleged that a "cam bearing repair kit" designed by Harley and sold for five hundred dollars was created specifically to fix the defect at issue here. Tietsworth also claims that during the 2000 model production year, Harley changed the

TC-88 cam bearing design to correct the inherent defect, and implemented the new cam design into its production.

¶ 5.   The cam bearing design in question is uniform to all of the 1999 and early-2000 model TC-88 equipped motorcycles, and Tietsworth claimed it made this entire line of motorcycles highly unreliable and potentially dangerous unless the cam bearing kit was installed to fix the defect. Further, he claimed that the existence of the engine defect was a material fact to him and the class, who reasonably relied, to their detriment, on the material information that Harley concealed from them and the public. Tietsworth alleged that he and the class members either would not have purchased the defective motorcycles, or would have paid less for them, had Harley disclosed the alleged defect.

¶ 6.   Tietsworth filed this proposed class action lawsuit against Harley on June 28, 2001, asserting four individual and representative claims. Tietsworth filed a first amended class action complaint (complaint) on September 27, 2001, adding David Bratz, John W. Myers, Gary Streitenberger, and Gary Wegner (collectively, Tietsworth), as individual and representative plaintiffs.

¶ 7.   On November 1, 2001, Harley moved to dismiss the complaint and stay discovery pending resolution of the motion to dismiss. Tietsworth opposed both motions. On December 17, 2001, the trial court granted Harley's motion to stay discovery, and took its motion to dismiss under advisement without argument. On February 27, 2002, the trial court issued an order dismissing the complaint in its entirety for failure to state a claim. Although Tietsworth never filed a motion for class certification, in its order, the trial court found that all of the prerequisites for class certification were met,

and that the class certification would have been appropriate if Tietsworth was able to establish his claims on the merits. Judgment was entered dismissing the case. Tietsworth now appeals the dismissal of his fraudulent concealment and DTPA claims.

## II. DISCUSSION

¶ 8. Tietsworth contends that the trial court erred in dismissing the fraudulent concealment and DTPA portions of the complaint for failure to state a claim. The question of whether a court erroneously dismissed a complaint for failure to state a claim is a question of law reviewed by this court *de novo;* this court "accepts the alleged facts and all reasonable inferences [drawn from those facts] as true." *Town of Eagle v. Christensen*, 191 Wis. 2d 301, 311–12, 529 N.W.2d 245 (Ct. App. 1995). This court will liberally construe the complaint, and reinstate Tietsworth's claims unless "it is quite clear that under no conditions can the plaintiff recover." *Id.* at 311 (citations omitted).

*A. Fraudulent Concealment Claim*

¶ 9. Tietsworth argues that the trial court erred in dismissing his fraudulent concealment claim because he properly alleged all the elements of a viable claim and because Wisconsin law does not require him to wait for his engine to fail before he can state a fraudulent concealment claim. We agree.

¶ 10. Tietsworth properly alleged all of the elements of a viable common law fraudulent concealment claim: (1) Harley concealed or failed to disclose a fact; (2) Harley had a duty to disclose such a fact; (3) the fact was material to the transaction; (4) Harley knew, and

intended, that its concealment of or failure to disclose the fact would create a false impression in Tietsworth; (5) Tietsworth reasonably relied upon Harley's deceit; and (6) Tietsworth suffered benefit of the bargain damages. *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 26–27, 42, 52–53, 288 N.W.2d 95 (1980); *see* WIS JI—CIVIL 2401.

¶ 11.  The trial court found that Tietsworth, as a matter of law, was unable to establish the "damage" element of his fraudulent concealment claim.[2] The measure of a plaintiff's damages in an action for deceit in connection with the sale of property is expressed as the "benefit of the bargain." *Ollerman*, 94 Wis. 2d at 52–53. It is a fundamental principle of Wisconsin law that "[a]ctual damage is harm that has already occurred or is reasonably certain to occur in the future." *Hennekens v. Hoerl*, 160 Wis. 2d 144, 152–53, 465 N.W.2d 812 (1991) (footnote omitted). "Under the benefit of the bargain rule, the measure of the purchaser's damages is typically stated as the difference between the value of the property as represented and its actual value as purchased." *Ollerman*, 94 Wis. 2d at 52–53; WIS JI—CIVIL 2405. An alternative, equally appropriate measure of damages under the "benefit of the bargain" rule is "the reasonable cost of placing the property received in the condition in which it was represented to be." *Ollerman*, 94 Wis. 2d at 53.

---

[2] Because the trial court denied that a claim was made based solely on Tietsworth's failure to establish the "damage" element of his fraudulent concealment claim, this is the only element that must be examined in depth.

¶ 12. Tietsworth alleged that what he and the class actually received (motorcycles with defective engines) was of lesser value than what Harley represented (first quality, non-defective motorcycles). Tietsworth alleged that he and the class members have suffered economic loss in the amount of the difference in value between their defective motorcycles and motorcycles with reliable, non-defective engines. Tietsworth further alleged that the "reasonable cost of placing the property received in the condition in which it was represented to be" under the second measure of the test is the five hundred dollar cam bearing repair kit produced by Harley. *Id.* Thus, Tietsworth properly alleged damages under both measures.

■

¶ 13. Tietsworth additionally argues that the trial court's determination that he must await an additional damage element of product failure before he can state a claim of fraud conflicts with the holding of the Wisconsin Supreme Court in *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 533 N.W.2d 780 (1995). We agree.

¶ 14. The *Pritzlaff* court held that a claim accrues:

> when there exists a claim capable of enforcement, a suitable party against whom it may be enforced, and a party with a present right to enforce . . . a claim when the plaintiff has suffered actual damage, defined as harm that has already occurred or is reasonably certain to occur in the future.

*Id.* at 315 (citations omitted); *see also Hennekens*, 160 Wis. 2d at 152–53.

¶ 15. The complaint alleged that the "cam bearing mechanism in the 1999 and early-2000 model year TC-88 engines was and is inherently defective in that it is unsound, fails prematurely, and/or has unreasonably dangerous propensity to fail, resulting in sudden and immediate engine failure."

¶ 16. The trial court failed to apply *Pritzlaff's* standard of "reasonably certain to occur" to determine whether damages are real. Instead, it required a showing of absolute certainty. No litigant can predict the future with absolute certainty, nor does Wisconsin law require them to do so. Tietsworth has pleaded that future damage is reasonably certain to occur because of TC-88's unreasonably dangerous propensity to fail.

¶ 17. Also, in holding that Tietsworth and the class can never establish any right to relief under the facts alleged in the complaint until their motorcycle engines fail due to the defect, the court imposed the physical damage element required to sustain negligence and strict liability claims to fraud, where a plaintiff's injury, like Tietsworth's, is the reduced value of the product as purchased as opposed to the value of the product as represented.

██

¶ 18. Unlike negligence and strict liability, which require physical harm to people and property when a product malfunctions, "[a]llegations of fraud . . . are in a class by themselves." *Khan v. Shiley Inc.*, 266 Cal. Rptr. 106, 112 (Cal. Ct. App. 1990). "For purposes of establishing fraud, it matters not that the [product] is still functioning, arguably as intended. Unlike the other theories, in which the safety and efficacy of the *product* is assailed, the fraud claim impugns defendants' *conduct.*" *Id.*

¶ 19. Likewise, this court has held that the plaintiffs can recover purely economic damages on a fraud theory. *Kailin v. Armstrong*, 2002 WI App 70, ¶ 28, 252 Wis. 2d 676, 643 N.W.2d 132. Thus, the relevant inquiry here, in the context of a fraud action, is whether a reasonable consumer would attach importance to the facts that Harley concealed, and which Tietsworth alleged were material to his purchase decision; whether these factors can be shown with credible evidence to have affected the motorcycles' value; and by how much. *Id.* at ¶¶ 31–34. Because Tietsworth addressed all elements of common law fraudulent concealment, and because Wisconsin law does not require Tietsworth to wait for his engine to fail before he can state a fraud claim, his complaint states an appropriate claim for common law fraudulent concealment.

## B. DTPA Claim

¶ 20. Tietsworth argues that the trial court erred in dismissing his DTPA claim because he pled all the elements of the DTPA and he need not wait until the motorcycle fails to assert a DTPA claim. We agree.

¶ 21. Tietsworth properly alleged all of the elements of a viable DTPA claim: (1) Harley advertised the motorcycles with TC-88 engines; (2) Harley's advertising was misleading; (3) Tietsworth suffered pecuniary loss as a result of Harley's misleading advertising. *See* Wis. Stat. § 100.18; Wis JI—Civil 2418.

¶ 22. The trial court found that Tietsworth was unable, as a matter of law, to establish pecuniary loss under the DTPA. Tietsworth argues that he and the class have suffered pecuniary loss in that they have purchased motorcycles that they would not have pur-

chased but for Harley's false advertising. Like Tietsworth's common law fraud damages, his pecuniary loss can be expressed in terms of both measures of benefit of the bargain damages.[3] The requirement that the pecuniary loss be caused by a violation of the DTPA is encompassed by the reliance element of fraudulent concealment. *See* WIS. STAT. § 100.18(11)(b); *see also Tim Torres Enters., Inc. v. Linscott,* 142 Wis. 2d 56, 70, 416 N.W.2d 670 (Ct. App. 1987). Accordingly, Tietsworth has alleged pecuniary loss because of a violation of the DTPA.

¶ 23.  Tietsworth also correctly argues that he and the class need not wait for their motorcycles to fail to assert DTPA claims. No Wisconsin court has ever held that DTPA plaintiffs must suffer any type of damage other than the benefit of the bargain losses Tietsworth seeks here. Significantly, in crafting its ruling, as stated earlier, the trial court did not have the benefit of *Kailin,* 2002 WI App 70. In *Kailin,* this court specifically ruled that the economic loss doctrine does not apply to DTPA claims, as the underpinnings of that doctrine "are either irrelevant to, or inconsistent with" the legislature's intended protections and remedies for false advertising. *Id.* at ¶ 42.

■

¶ 24.  The legislative intent behind the DTPA also supports an expansive definition of pecuniary loss, without regard to whether the subject of a fraudulently induced transaction has malfunctioned.[4] First, the

---

[3] *See* Section A for an explanation of "benefit of the bargain" damages.

[4] It is important to note that this interpretation of pecuniary loss is not only found in the Wisconsin legislative intent, but from a great weight of authority nationwide. *See Hinchliffe v.*

DTPA is a broad remedial statute designed to "protect the public from all untrue, deceptive or misleading representations made in sales promotions." *Grube v. Daun*, 173 Wis. 2d 30, 57, 496 N.W.2d 106 (Ct. App. 1992); *see also Tim Torres*, 142 Wis. 2d at 72. Second, the legislature enacted the DTPA to supplement and improve upon traditional common law remedies available to consumers. *Kailin*, 2002 WI App 70 at ¶ 42. Third, allowing benefit of the bargain damages for false advertising, without regard to whether a product has failed, serves as an incentive to manufacturers to conduct business honestly, and punishes those who engage in deceptive conduct. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 984, 542 N.W.2d 148 (1996). Finally, recognizing that consumers incur pecuniary loss whenever they pay a premium for products they were fraudulently induced to purchase provides an incentive to consumers and their attorneys to make full use of the DTPA as the legislature intended. *See id.* at 984–85 (reasoning that the potential for recoveries under the Lemon Law, another broad remedial statute, should give consumers incentive to bring claims). Conversely, the trial court's interpretation of the DTPA to require proof of product malfunction runs contrary to the legislative purpose of enacting it.

*American Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981); *Kagan v. Gibraltar Sav. & Loan Ass'n*, 676 P.2d 1060, 1065 (Cal. 1984); *Mayhall v. A.H. Pond Co.*, 341 N.W.2d 268, 271 (Mich. Ct. App. 1983); *Miller v. American Family Publishers*, 663 A.2d 643, 655 (N.J. Super. Ct. Ch. Div. 1995); *Geismar v. Abraham & Strauss*, 439 N.Y.S.2d 1005, 1008 (N.Y. Dist. Ct. 1981); *Leardi v. Brown*, 474 N.E.2d 1094, 1101–02 (Mass. 1985); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996); *Schiffner v. Motorola, Inc.*, 697 N.E.2d 868, 874–76 (Ill. App. Ct. 1998); and *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 862, 864–67 (Ill. App. Ct. 1997).

¶ 25.   Because Tietsworth pled all elements of a DTPA claim in his complaint and because engine failure is not needed to assert a DTPA claim, his complaint states an appropriate claim for violation of the DTPA.

*C. Class Certification*

¶ 26.   Tietsworth had not yet moved for class certification when the trial court dismissed this action. Nonetheless, in its order, the trial court found that all the requirements for class certification were met, but denied certification based on its view of the merits of Tietsworth's claim. Tietsworth argues that the court's denial of the certification was erroneous, we agree.

¶ 27.   The trial court's view of the merits is not a proper basis on which to deny class certification. *See Cruz v. All Saints Healthcare Sys., Inc.*, 2001 WI App 67, ¶¶ 11–24, 242 Wis. 2d 432, 625 N.W.2d 344. Insofar as the merits did affect the trial court's decision, however, this court's reinstatement of Tietsworth's claims is accompanied by a reversal of the trial court's denial of class certification.

*By the Court.*—Order reversed.