Robert WILLIAMS, et al., Plaintiffs,

v.

THE PURDUE PHARMA CO., et al. Defendants.

No. CIV.A.02–0556(RMC).

United States District Court, District of Columbia.

Dec. 31, 2003.

Eric Lee Siegel, Neil L. Henrichsen, Henrichsen Siegel, PLLC, Washington, DC, Richard S. Lewis, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, for Plaintiffs.

Eric H. Holder, Mark H. Lynch, Patrick S. Davies, Covington & Burling, Washington, DC, Kathleen Frances Sullivan, Paul F. Strain, Venable, Baetjer and Howard, LLP, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

COLLYER, District Judge.

The question raised by this lawsuit is whether patients who were prescribed a drug for pain, and who personally suffered no ill effects or lack of efficacy, can sue for money damages under D.C. law as consumers injured by the drug manufacturers' allegedly-fraudulent advertising claims. Finding that the answer is no, the Court will grant the defendants' motion to dismiss.

This is a class action based on the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C.Code § § 28–3901 *et seq.*, to obtain a refund of all monies paid by plaintiffs and class members for OxyContin® ("OxyContin"), a pain medication for chronic pain relief, plus statutory penalties, treble damages and punitive damages. The class specifically *excludes* "any persons seeking to assert a personal injury claim against Defendants." Compl. ¶ 47. It is alleged that the defendants engaged in deceptive advertising and that their over-promotion of OxyContin inflated the price of the drug so that all class members "paid a higher price for OxyContin than if Defendants had not engaged in falsely advertising and promoting OxyContin." Compl. ¶ 42.

The courts in the District of Columbia have not had occasion to determine whether a consumer who purchased a product that acted as advertised for him but not for others, and who, in that sense, has suffered no injury, can nonetheless maintain a CPPA action. They have, however, agreed uniformly that an injury-in-fact must underlie legal suits. Because the plaintiffs have suffered no injury-in-fact, the complaint will be dismissed.

## BACKGROUND FACTS

Plaintiffs Robert Williams and Clifford Perry brought a two-count complaint on behalf of themselves and others similarly situated to recover injunctive relief, refunds, and damages under the CPPA and common law civil conspiracy against defendants The Purdue Pharma Company, Purdue Pharma, L.P., Purdue Pharma Inc., The P.F. Laboratories, Inc., The Purdue Frederick Company (collectively, "Purdue"), Abbott Laboratories and Abbott Laboratories, Inc. (collectively "Abbott"), for damages allegedly caused by the defendants' deceptive, misleading and fraudulent advertising and over-promotion of OxyContin. Plaintiffs allege that the advertising campaign was false and misleading within the meaning of the CPPA in

two respects: (i) that OxyContin would provide "smooth and sustained" pain relief for twelve hours through a controlled-release formulation, Compl. ¶¶ 14, 18, 55; and (ii) that OxyContin posed little risk of addiction when taken as prescribed. *Id.* ¶¶ 18, 28, 56. Neither plaintiff complains, however, that OxyContin did not provide 12-hour relieve to him or that he became addicted to the medication.

Messrs. Williams and Perry were prescribed OxyContin in the District of Columbia for chronic pain and purchased and received OxyContin from pharmacies located in the District of Columbia. *Id.* ¶¶ 2, 3. Purdue owns the patent for OxyContin tablets and is engaged, *inter alia,* in its manufacture, advertising, promotion, sale and/or distribution, including in the District of Columbia. *Id.* ¶¶ 4–8. Abbott is allegedly in the same business, under agreement with Purdue, and also in the District of Columbia. ¶¶ 9, 10. The complaint alleges that the defendants engaged in a false and misleading advertising campaign directed to doctors, and through newspaper articles and patient brochure and videotape, directly to patients. *Id.* ¶¶ 18–43. Plaintiffs seek to represent a class described as "[a]ll persons who purchased or received OxyContin in the District of Columbia by prescription from 1995 to the present" *with the exception of* "any persons seeking to assert a personal injury claim against Defendants." *Id.* ¶ 47. Those who would be excluded would be all patients who failed to receive 12-hour relief from OxyContin and/or who had problems with its alleged addictive qualities.

The complaint was initially filed in the Superior Court of the District of Columbia. It was removed to federal court by the defendants on March 21, 2002. Thereafter, the Court denied the plaintiffs' motion to remand. Defendants have now filed a motion to dismiss, which the plaintiffs vigorously oppose.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion "tests the legal sufficiency of the complaint." *ACLU Found. of S. Cal. v. Barr,* 952 F.2d 457, 472 (D.C.Cir.1991). Under 12(b)(6), a court "does not test whether the plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim." *Price v. Crestar Secs. Corp.,* 44 F.Supp.2d 351, 353 (D.D.C.1999). In reviewing such a motion, the Court accepts the allegations in the non-movant's pleading as true and draws all reasonable inferences in the non-movant's favor. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983). However, the Court need not accept as true plaintiff's legal conclusions. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A complaint may not be dismissed on a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

## STATUTORY PROVISIONS

"[T]he CPPA evidently was intended to be a far-reaching consumer protection law." *Howard v. Riggs Nat'l Bank,* 432 A.2d 701, 710 (D.C.1981). It was amended effective October 19, 2000, to expand its reach even further. Prior to that date, the private right of action section of the CPPA provided that:

> Any consumer who suffers any damages as a result of the use or employment by any person of a trade practice in violation of a law of the District of Columbia within the jurisdiction of the Department may bring an action in the Superi-

or Court of the District of Columbia to recover or obtain any of the following

. . . .

D.C.Code § 28–3905(k)(1) (1998). After October 19, 2000, this provision now reads:

A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia and may recover or obtain the following remedies . . . .

D.C.Code § 28–3905(k)(1). The October 2000 amendment is not applied retroactively to conduct occurring before its effective date. *Athridge v. Aetna Cas. and Sur. Co.*, 163 F.Supp.2d 38, 56 (D.D.C.2001) (applying 1997 version to conduct occurring in 1997); *Family Fed. Sav. & Loan v. Davis (In re Davis)*, 172 B.R. 437, 466 (Bankr. D.C.1994) (refusing to apply 1991 amendments to pre–1991 conduct).

## ANALYSIS

Defendants raise two major arguments for dismissal of the complaint at this early stage of the litigation. First they argue that the complaint fails to allege a proper "consumer transaction" under the CPPA. Second, they argue that the plaintiffs fail to allege any actionable injury.[1] These arguments will be addressed in turn.

### A. Have Plaintiffs Alleged a "Consumer Transaction"?

█ The CPPA was adopted by the D.C. Council to protect local consumers from improper and fraudulent trade practices. *Athridge*, 163 F.Supp.2d at 55 (CPPA "supplies consumers with a cause of action against merchants selling them goods or services."). Purdue and Abbott argue that plaintiffs have failed to allege, and cannot allege, a consumer-merchant relationship between themselves and the defendants: plaintiffs specify that they purchased OxyContin from pharmacies in the District of Columbia and not from the defendants. Since Purdue and Abbott only sold OxyContin to wholesalers or pharmacies that were "regularly buying the goods for later resale to another," the defendants argue that they are not "merchants" and the CPPA does not apply. *See Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C.1989); *see also Indep. Communications Network, Inc. v. MCI Telecomm. Corp., Inc.*, 657 F.Supp. 785, 788 (D.D.C.1987) ("[T]he Act was meant to embrace consumer-merchant interactions exclusively.").

Plaintiffs counter that the CPPA expressly defines a merchant as "a person who does or would sell . . . either directly or indirectly, consumer goods or services, or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice." D.C.Code § 28–3901(a)(3). They also argue that the D.C. Court of Appeals has already held that the term "merchant" is "not limited to the actual seller of the goods or services complained of," but also includes "a 'person' connected with the 'supply' side of a consumer transaction." *Howard*, 432 A.2d at 709.

Neither *Adam A. Weschler & Son* nor *Howard* fully answers the question of whether the relationship between defendants—manufacturers who sell through intermediary pharmacies—and plaintiffs—acknowledged consumers—constitutes a consumer-merchant relationship within coverage of the CPPA. The former case determined that the CPPA "is not intend-

---

1. Defendants also argue that there is no conspiracy under the CPPA. Given the Court's disposition of the case, it is unnecessary to reach this point.

ed to supply merchants with a private cause of action against other merchants" because the statute covers only consumer and merchant relationships. *Adam A. Weschler & Son*, 561 A.2d at 1005. The latter case found that a merchant does not become a "guarantor," liable under the CPPA, for the work product of a second merchant just by recommending the goods or services of the second merchant to a consumer. *Howard*, 432 A.2d at 710. The circumstances of this case differ markedly from those fact patterns. Defendants here are up-stream drug manufacturers who promote their products to physicians and patients but who actually sell only to wholesalers or large pharmacies for re-sale.

On a defense motion to dismiss, the Court must construe the facts of the complaint favorably to the plaintiffs and give all reasonable inferences in their favor. If Purdue and Abbott promoted OxyContin only to physicians and other non-patients, it might be more difficult to discern a consumer-merchant relationship. The plaintiffs have alleged, however, that Purdue and Abbott issued brochures and a videotape directed to consumer-patients.[2] These materials extended beyond the warnings and labels on OxyContin required by the Food and Drug Administration, and are allegedly insufficient and misleading. More affirmatively, Defendants are alleged to have engaged in persuasive sales activities vis-a-vis individual consumers. *See Howard*, 432 A.2d at 709 (citing D.C. Council Committee Report, explaining a "'respondent' is the merchant, or another merchant further along the supply chain who is deemed legally responsible under relevant substantive law ....") The Court concludes that the activities alleged

in the complaint may have created a consumer-merchant relationship between Purdue and Abbott and the plaintiffs sufficient for CPPA coverage and that the complaint is not subject to a motion to dismiss on this basis.

### B. Have Plaintiffs Alleged An Actionable Injury?

Disposition of this case depends on understanding plaintiffs' complaint despite some confusion that its terms have caused.

Plaintiffs state that their action arises under the CPPA for alleged economic losses. *See* Plaintiffs' Opposition to the Defendants' Motion to Dismiss at 2 ("Opp."). Plaintiffs argue that they "have been economically injured because they purchased an expensive name-brand drug that did not possess the characteristics represented by Defendants," *i.e.,* "smooth and sustained analgesia for twelve-hours per dose" and "a lower abuse potential." Opp. at 6; *see also id.* at 7 ("Plaintiffs have been deprived of the benefit of their bargain.... [They] have also suffered economic damages because they purchased a product whose price was unjustifiably inflated due to Defendants' misrepresentations.... Defendants could not have charged such a high price for OxyContin had it been known that it actually, routinely failed to provide effective pain relief for twelve hours, and that it presented the same abuse and addiction risks as morphine and other opioids despite its controlled-release formulation.").

The complaint details at length alleged failures of OxyContin to live up to its advertising, most especially in not providing 12–hour pain relief and in being more addictive than forecast. This undoubtedly explains defendants' argument that "[t]his

---

2. Abbott does not argue that a consumer relationship is lacking, stating that the status of the pharmaceutical companies as erstwhile merchants is a matter of fact not susceptible to a motion to dismiss. The discussion in the text therefore does not relate to Abbott.

is a product liability suit in which the plaintiffs fail to allege any physical injury." Memorandum of Points and Authorities in Support of The Purdue Defendants' Motion to Dismiss the Complaint at 1 ("Purdue Motion"). The class these plaintiffs seek to represent, however, has *not* had those problems and this is *not* a product liability suit. *See* Compl. ¶ 47 (excluding "any persons seeking to assert a personal injury claim against Defendants"); Joint Report Pursuant to LCvR 16 at 2 ("Plaintiffs specifically do not seek damages for personal injuries caused by their use of OxyContin."); Opp. at 1. The legitimacy of the complaint must be determined by reference to the CPPA and relevant law in that arena.

As the parties' arguments recognize, this case turns on the nature of the injury or damages claimed by plaintiffs. Although the plaintiffs allege a "benefit of the bargain" theory of injury, Opp. at 7, they do not allege that OxyContin failed to provide them effective pain relief or that they suffered any adverse consequences from their use of OxyContin. Defendants argue that, absent such allegations, "it must be assumed that OxyContin worked for plaintiffs and that consequently they got what they paid for." Purdue Motion at 4. The Court agrees. Without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs. *See Barbarin v. Gen. Motors Corp.*, Civ. No. 84–0888(TPJ), 1993 WL 765821, at *2 (D.D.C. Sept. 22, 1993) ("[O]wners whose [product] performed to their entire satisfaction cannot demonstrate, as a matter of law, the 'fact of damage' necessary to state a claim under Magnuson–Moss."). Although *Barbarin* involved the Magnuson–Moss Act and an allegedly defective automobile, the same analysis applies here to claims that predate the October 19, 2000, amendment to

the CPPA in that both statues had almost identical damages requirements. *Compare* Magnuson–Moss, 15 U.S.C. § 2310(d)(1) (limiting suit to a "consumer who is damaged by the failure of a supplier . . . to comply with any obligation under this title") *with* CPPA, D.C.Code § 28–3805(k)(1) (1998) (limiting suit to a "consumer who suffers any damages as a result of the use . . . of a trade practice in violation of a law of the District of Columbia"); *see also Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir.1999) (dismissing claims for, *inter alia*, violations of Illinois, Florida, Mississippi, Missouri, New York, and Texas consumer protection laws). Indeed, this court has previously held that "a damage action under this [pre–2000] Act requires a showing that the consumer suffered actual damages because of the misrepresentation or omission claimed to violate the Act." *Athridge*, 163 F.Supp.2d at 56.

■ Plaintiffs argue that the CPPA states that it is violated by any illegal trade practice "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C.Code § 28–3904. This provision has been in the law through numerous amendments and was part of the statute at the time of *Athridge*. The Court is not persuaded that it should rely on this generalized introductory language to the exclusion of the more specific language in Section 28–3905(k)(1) that only a "consumer who suffers any damages" could bring suit under the CPPA before October 2000. *See Howard*, 432 A.2d at 708–09 (applying the specific and not general provisions of CPPA). Those patients who purchased OxyContin before October 19, 2000, and who obtained effective pain relief without addiction received the "benefit of their bargain." Those who did not, as plaintiffs concede, can be compensated through tort law. "If tort law fully com-

pensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation." *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 288 F.3d 1012, 1016–17 (7th Cir.2002), *cert. denied sub. nom. Gustafson v. Bridgestone/Firestone, Inc.*, 537 U.S. 1105, 123 S.Ct. 870, 154 L.Ed.2d 774 (2003).

The more difficult question is whether plaintiffs can bring a pure CPPA action for alleged illegal trade practices when their alleged injury is a higher price for Oxy-Contin because of defendants' promotional tactics. Can this "fraud on the market" theory suffice for this purpose? In the District of Columbia, and under D.C. law, the answer is "no."

 "Standing to assert a claim or counter-claim, when challenged, requires a showing of actual or threatened injury redressable by the court." *Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130, 135 (D.C.App.1987) citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Standing requires "individualized proof" of both the fact and the extent of the injury. *Consumer Fed'n of Am. v. Upjohn Co.*, 346 A.2d 725, 728 (D.C.1975). The amendment to the CPPA in 2000 did not change the requirements for standing under D.C. law, despite its broad language.

> Congress did not establish this court under Article III of the Constitution, but we nonetheless apply in every case "the 'constitutional' requirement of a 'case or controversy' and the 'prudential' prerequisites of standing." In enforcing these requirements, we " 'look to' federal standing jurisprudence, [both] constitutional and prudential." The *sine qua non* of constitutional standing to sue is an actual or imminently threatened injury that is attributable to the defendant and capable of redress by the court. The plaintiff, or those whom the plaintiff properly represents, "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical."

*Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1206 (D.C.2002) (alteration in original) (internal citations omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); D.C.Code § 11–705(b) (limiting jurisdiction in D.C. Court of Appeals to "[c]ases and controversies").

The complaint before the Court fails in two respects. While it asserts that defendants engaged in false and misleading advertising, it does not plead that these defendants were in any way deceived—or even saw—any of that advertising. It also fails to allege any particularized and specific injury-in-fact suffered by these plaintiffs. In this respect, the Court finds *Rivera v. Wyeth–Ayerst Laboratories*, 283 F.3d 315 (5th Cir.2002), both instructive and persuasive.

*Rivera* concerned a case similar to the one here. Ms. Rivera sued Wyeth–Ayerst, a drug manufacturer, under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com.Code §§ 17.50, 17.46 (Vernon Supp. 1998), after she was prescribed and used one of its drugs; she alleged a failure to list warnings of possible liver damage and/or that the drug was defective; other patients were injured by the drug but not Ms. Rivera; and Ms. Rivera wanted a refund. *Rivera*, 283 F.3d at 319. The Fifth Circuit found that the alleged violation of Texas law, when Ms. Rivera and her putative class were "not among the injured," "cannot constitute an injury in fact." *Id.* at 320.

"[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *accord Defenders of Wildlife*, 504 U.S. at 563, 112 S.Ct. 2130. It is not enough that Wyeth may have violated a legal duty owed to some other patients; the plaintiffs must show that Wyeth violated a legal duty owed to them. "What courts require ... is that injury be personal." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir.2001).

*Rivera*, 283 F.3d at 320; *see also Barbarin*, 1993 WL 765821, at *2. Other courts agree.[3] The cases cited by the plaintiffs involve products with a defect that is reasonably certain to appear in the future;[4] since these plaintiffs do not allege any future harm that is expected from their past ingestion of OxyContin, this precedent is inapposite.

The invasion of a purely legal right without harm to the consumer—in this case, to freedom from alleged false and misleading advertising—can be addressed through the administrative process of the Government of the District of Columbia. *Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1330 (D.C.1995) (distinguishing court standing and administrative standing).

Should they wish to pursue this matter, plaintiffs should avail themselves of that forum. Without a particularized injury, absent in this case, they do not have standing to proceed in court.

The complaint will be dismissed. A separate Order accompanies this Memorandum Opinion.

der common law fraud and breach of warranty); *Spuhl v. Shiley*, 795 S.W.2d 573, 580–81 (Mo.Ct.App.1990) (dismissing no-injury claims alleging negligent and strict liability failure to warn).

**4.** *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 609 (Tex.App.1995) (defective computer software); *Tietsworth v. Harley–Davidson, Inc.*, 261 Wis.2d 755, 661 N.W.2d 450, 454–55 (2003) (motorcycles with defective engines) reh'g granted, 262 Wis.2d 500, 665 N.W.2d 375 (2003).

**3.** *See In re Air Bag Prods. Liab. Litig.*, 7 F.Supp.2d 792, 803, 805 (E.D.La.1998) (dismissing no-injury claims under Texas law); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D.N.Y.1997) (dismissing no-injury claims under common law fraud, breach of warranty, and negligent misrepresentation); *Martin v. Ford Motor Co.*, 914 F.Supp. 1449, 1455 (S.D.Tex.1996) (dismissing no-injury claims under Texas Deceptive Trade Practices Act); *Walus v. Pfizer, Inc.*, 812 F.Supp. 41, 44–45 (D.N.J.1993) (dismissing no-injury claims under New Jersey Products Liability Act); *Yost v. Gen. Motors Corp.*, 651 F.Supp. 656, 657–58 (D.N.J.1986) (dismissing no-injury claims un-