## In re FRUIT JUICE PRODUCTS MARKETING AND SALES PRACTICES LITIGATION.

### No. 11–MD–02231–MAP.

United States District Court,
D. Massachusetts.

Dec. 21, 2011.

---

Patrick J. Sheehan, Whatley Drake & Kallas, Floor Boston, MA, Reginald Von Terrell, The Terrell Law Group, Oakland, CA, for Plaintiffs.

Robert M. Buchanan, Jr., E. Macey Russell, Courtney M. Schou, Choate, Hall & Stewart, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS' MOTION REQUESTING JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS* (Dkt. Nos. 16 and 18)

PONSOR, District Judge.

## I. INTRODUCTION

This multi-district litigation consists of two consolidated class action complaints. In the first ("*Kennedy* complaint"), four plaintiffs are suing Defendants The Coca–Cola Company, Gerber Products Company, and Mott's, LLP. In the second ("*Littlefield* complaint"), four plaintiffs are suing Defendants Del Monte Corporation,

Trader Joe's Company, Welch Foods, Inc., The Hain Celestial Group, Inc., The J.M. Smucker Company, Dole Food Company, Inc., KFP International, Ltd., and Topco Associates, L.L.C. Both complaints assert claims for violations of various state consumer protection laws, breach of warranty, and unjust enrichment, alleging that Defendants misled Plaintiffs into believing that certain of their products were safe, whereas the products in fact contained lead and posed a health risk, especially to children.

■ Defendants now bring a Motion to Dismiss the complaints (Dkt. No. 16), which Plaintiffs oppose (Dkt. No. 20). Defendants have also filed an unopposed motion requesting that the court take judicial notice of three sets of facts that have been posted on the FDA's website. (Dkt. No. 18.) For the reasons stated below, the court will allow Defendants' motion to dismiss on the ground that Plaintiffs have failed to allege any injury in fact and allow Defendants' unopposed request for judicial notice.

## II. BACKGROUND

On June 9, 2010, the Environmental Law Foundation ("ELF"), a non-profit organization, sent notices to numerous manufacturers of juice and packaged fruit products, including Defendants, alleging that the companies were not in compliance with the California Safe Drinking and Water and Toxic Enforcement Act of 1986 ("Proposition 65") because the manufacturers failed to disclose that their products, including the products at issue in this case, contained lead. The notice alleged that these products contained amounts of lead greater than the permissible daily intake level set by Proposition 65 of 0.5 micrograms per day.

The notice prompted the Food and Drug Administration ("FDA") to check the levels of lead in some of the products cited by the ELF. Following its analysis, the FDA concluded that "[a]lmost all of the products ... contained a small amount of lead, but in each case the level found would not pose an unacceptable risk to health." (Dkt. No. 19, Ex. C, FDA, *Low Levels of Lead in Some Juice Products.*) The FDA's conclusion was based in part on a guidance report it issued in 2004, which stated that "lead levels in juice above 50 ppb may constitute a health hazard...." (Dkt. No. 19, Ex. A, FDA, *Guidance for Industry: Juice HACCP Hazards and Controls Guidance First Edition; Final Guidance,* at 6.) No evidence exists in the record suggesting exactly how much lead is in Defendants' products.

Based on the ELF notice, Plaintiffs brought these actions against Defendants, which have been consolidated into a multidistrict class action litigation. Plaintiffs' proposed class consists of "themselves and other consumers who purchased the Contaminated Products in the United States during the relevant time period." (*Littlefield* Compl. ¶ 43; *Kennedy* Compl. ¶ 37.)

Plaintiffs allege that Defendants were in a superior position relative to consumers to know that their products contained dangerous amounts of lead. Plaintiffs further allege that, despite this knowledge, Defendants marketed their products as safe for consumption, specifically by children, and did not disclose on their promotional materials or labels the presence of lead, which is associated with a variety of health risks and can be particularly harmful to children. Plaintiffs cite numerous reports that have found children to be more susceptible to chemical toxicity than adults, and others that have found lead to be a hazardous chemical that can cause severe health problems. Plaintiffs allege that, if they had known about the lead in Defen-

dants' products, they would not have purchased any of the products.

Based on these allegations, the *Littlefield* complaint brings nine causes of action and the *Kennedy* complaint four causes of actions against Defendants. The majority of Plaintiffs' claims are for violations of the consumer protection laws of states in which Defendants maintain their principal places of business. Plaintiffs also bring claims under the consumer protection laws of all states in which potential class members purchased Defendants' products. Finally, Plaintiffs bring claims for breach of the implied warranties of merchantability and fitness for a particular purpose and for unjust enrichment.

## III. *DISCUSSION*

■ Defendants make several arguments for dismissal of the complaints, including (1) that Plaintiffs lack standing, (2) that the claims are preempted by federal law, (3) that Plaintiffs cannot bring claims under the laws of states in which they do not live and did not purchase products, and (4) that Plaintiffs fail to state any claims. However, the foundational argument that Plaintiffs lack standing, which would be fatal to all of Plaintiffs' claims if accepted, is so compelling that it is unnecessary for the court to reach the numerous satellite theories that Defendants offer.

To establish Article III standing, a plaintiff must first demonstrate that he has suffered an "injury in fact." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). The injury must be concrete and the alleged harm "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (citing *Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). If a plaintiff fails to allege sufficient facts to satisfy this requirement, the case must be dismissed.

In this case, Plaintiffs simply have not alleged any type of injury in fact.

Plaintiffs offer two potential theories of injury in fact. First, they allege that the lead in Defendants' products posed a health risk and that, by consuming these products, they placed themselves and their children at risk of future harm from lead poisoning. Second, Plaintiffs allege that they suffered economic injury when they purchased products that Defendants advertised as safe, but that in fact contained dangerous amounts of lead. Both theories, however, run into the same problem—Plaintiffs fail to allege any actual injury caused by their purchase and consumption of the products. This pleading deficiency is particularly glaring, given that the FDA has found at least some of the products at issue to be safe. (Dkt. No. 19, Ex. C, FDA, *Low Levels of Lead in Some Juice Products.*)

■ Turning to the first standing theory, the court must conclude that Plaintiffs' claim of exposure to "potential adverse health effects" or "potential harm" (*Littlefield* Compl. ¶¶ 39, 42, 52; *Kennedy* Compl. ¶¶ 33, 36) is insufficient for Article III standing. A threatened future injury must be "certainly impending" to grant Article III standing. *Whitmore,* 495 U.S. at 158, 110 S.Ct. 1717 (internal citation omitted). In product liability cases, courts have held that to establish standing based on a threat of future harm, plaintiffs must plead "a credible or substantial threat to their health...." *Herrington v. Johnson & Johnson Consumer Cos., Inc.,* No. C 09–1597 CW, 2010 WL 3448531, at *3 (N.D.Cal. Sept. 1, 2010); *see also Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,* 489 F.3d 1279, 1293–96 (D.C.Cir.2007); *Sutton v. St. Jude Medical S.C., Inc.,* 419 F.3d 568, 570–75 (6th Cir. 2005).

The complaint here contains no allegations that either Plaintiffs or anyone else ever suffered any type of injury from consuming Defendants' products. The products have not been recalled and the FDA has found that at least some of these products do not pose an unacceptable risk to human health. Plaintiffs have made no allegations as to the amount of lead actually in Defendants' products, have not claimed that any particular amount in the products is dangerous, and have not alleged that any specific amount has caused actual injuries to any plaintiff. Under these circumstances, Plaintiffs' allegations of risk of future harm to class members are insufficient to meet the "credible or substantial threat" standard. The claim of potential future injury is simply too hypothetical or conjectural to establish Article III standing.

Other cases—especially a series of cases involving lead in lipstick—have made clear that the type of speculative future injury here cannot form the basis of a lawsuit. *See Koronthaly v. L'Oreal USA, Inc.*, 374 Fed.Appx. 257 (3d Cir.2010), *aff'g* No. 07–CV–5588, 2008 WL 2938045 (D.N.J. July 29, 2008); *Frye v. L'Oreal USA, Inc.*, 583 F.Supp.2d 954 (N.D.Ill.2008). In the lipstick cases, a non-profit organization released a report revealing that certain L'Oreal lipstick products contained lead. *Frye*, 583 F.Supp.2d at 956. Based on this report, several plaintiffs who used the L'Oreal products brought claims against L'Oreal, alleging that L'Oreal marketed the products as safe and that the plaintiffs would not have purchased the products if they had known the products contained lead. *Koronthaly*, 374 Fed.Appx. at 258; *Frye*, 583 F.Supp.2d at 957. As in the case at hand, the plaintiffs in the L'Oreal cases did not allege that the levels of lead in L'Oreal's lipsticks violated any specific standards set by the FDA for those products.[1] *Koronthaly*, 2008 WL 2938045, at *5. Furthermore, similarly to this case, the FDA had issued a report "finding that the lead levels in the Defendants' lipsticks were not dangerous...." *Koronthaly*, 374 Fed.Appx. at 259.

In both *Koronthaly* and *Frye*, the courts dismissed the complaints on the grounds that plaintiffs had not suffered any injury.[2] In *Koronthaly*, the plaintiff specifically alleged that, although she had not suffered any present injury, she remained at risk for future injury from lead poisoning. *Koronthaly*, 2008 WL 2938045, at *3–4. The district court held, however, that "[w]hile Plaintiff may suffer an injury at some point in the future, this potentiality does not provide her with an injury-in-fact" because the injury is too "conjectural and hypothetical." *Id.* at *4–5; *see also Frye*, 583 F.Supp.2d at 958 ("Courts have been reluctant to recognize claims for 'enhanced risk' because the claim is inherently speculative, requiring the court to 'anticipate the probability of a future injury.'" (internal citation omitted)).

Plaintiffs' allegations in this case cannot fairly be distinguished from the allegations in the lipstick cases. The plaintiffs in those cases, as Plaintiffs here, alleged that lead could be harmful, that the lipsticks contained lead, that they would not have purchased the lipsticks had they known

---

1. The plaintiffs alleged only that the levels of lead in lipstick exceeded the levels of lead that the FDA allowed in candy. *Koronthaly*, 2008 WL 2938045, at *1.

2. In *Koronthaly*, the court dismissed the complaint on standing grounds. *Koronthaly*, 374 Fed.Appx. at 258. In *Frye*, the court dismissed the complaint on the ground that the plaintiff had not alleged any actual damages as required for a claim under the Illinois Consumer Fraud and Deceptive Practices Act. *Frye*, 583 F.Supp.2d at 957.

about the lead, and that they were at risk of future harm from lead poisoning. Furthermore, as in those cases, Plaintiffs here have not alleged that the levels of lead in Defendants' products violated any FDA standards or caused any injuries to any individuals who consumed the products. Consequently, Plaintiffs' risk of future harm is too speculative to constitute injury in fact.

■ Plaintiffs' second theory of injury in fact is equally flawed. Plaintiffs allege that Defendants promised to provide products that were safe for consumption, but Plaintiffs received products that posed a health risk to them and their children. Consequently, the products were unsuitable for their intended purpose—consumption—and valueless. Because Plaintiffs would not have purchased these products if they had known the products contained lead, Plaintiffs argue that they suffered an economic injury—the price of the product—when they purchased the products. That economic injury, Plaintiffs say, is a legally cognizable "injury in fact."

The prior discussion makes the problem with this argument clear. Because Plaintiffs are unable to show that *any* actual harm resulted from consumption of the fruit juice products, their allegation of "economic" injury lacks substance. The fact is that Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm. The products have not been recalled, have not caused any reported injuries, and do not fail to comply with any federal standards. The products had no diminished value due to the presence of the lead. Thus, Plaintiffs received the benefit of the bargain, as a matter of law, when they purchased these products.

Other courts that have addressed similar "benefit of the bargain" standing arguments agree that plaintiffs who have not been injured by an allegedly defective product generally do not have standing to sue the product's manufacturer. *See e.g., Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315 (5th Cir.2002) (holding that plaintiffs, who purchased an anti-inflammatory drug that was later withdrawn from the market because of its potential to cause liver damage, lacked standing because they did not claim that they were harmed by using the drug); *Williams v. Purdue Pharma Co.*, 297 F.Supp.2d 171 (D.D.C.2003) (dismissing complaint on standing grounds where Defendant deceptively advertised a drug as providing twelve-hour pain relief with little risk of addiction because plaintiffs did not allege that the drug failed to provide them with effective pain relief or that they suffered personal injuries from ingesting the drug).

Plaintiffs attempt to distinguish these cases by focusing on the potential for future harm that they argue is present in this case. In both *Rivera* and *Williams*, the courts dismissed the complaints at least in part because plaintiffs did not allege any future harm that could be expected from their ingestion of the drugs. *Rivera*, 283 F.3d at 317; *Williams*, 297 F.Supp.2d at 178. In this case, on the other hand, Plaintiffs argue that they have alleged a continued risk of harm for them and their children from the consumption of the fruit juice products. (*Littlefield* Compl. ¶¶ 22–37; *Kennedy* Compl. ¶¶ 17–31.) Because of this risk of future harm, Plaintiffs claim that, unlike the plaintiffs in *Rivera* and *Williams*, they did not receive the benefit of their bargain when they purchased Defendants' products. However, considering the absence of any actual injury and the absence of any concrete allegations supporting concerns about the specific products' safety, Plaintiffs' claims of risk of future harm remain too specula-

tive to supply an injury in fact, even under the benefit-of-the-bargain theory.

The lipstick cases are, again, on point. The plaintiffs in those cases alleged economic injury on the almost identical argument that they would not have purchased the lipsticks if they had known the products contained lead. *Koronthaly*, 374 Fed. Appx. at 258; *Frye*, 583 F.Supp.2d at 957. The district court in *Koronthaly* dismissed the plaintiff's argument of economic injury, in part because the FDA had not regulated levels of lead in lipstick. *Koronthaly*, 2008 WL 2938045, at *3–4. The court held: "Plaintiff bought lipstick and used the lipstick, only complaining that the lipstick's levels of lead are unsatisfactory to her." *Id.* at *5. The Third Circuit affirmed the district court's holding, adding that

> Koronthaly's argument that she was misled into purchasing unsafe lipstick products is belied by the FDA's report finding that the lead levels in the Defendants' lipsticks were not dangerous and therefore did not require warnings.

*Koronthaly*, 374 Fed.Appx. at 259. Despite the plaintiff's argument that she did not receive the benefit of the bargain when she purchased L'Oreal lipstick because she expected to receive a safe product, but in fact received a lead-contaminated product that put her at risk of future harm, the Third Circuit concluded that the plaintiff failed to allege "that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect," and, consequently, "Koronthaly has not demonstrated a concrete injury-in-fact." *Id.*

Likewise, the court in *Frye* rejected the plaintiff's benefit-of-the-bargain argument:

> In the instant case, plaintiff alleges that had the presence of lead been revealed, she would not have purchased the lipstick at issue. But she does not allege that she would not have purchased lip-

stick, that she would have purchased cheaper lipstick, or that the lipstick in question had a diminished value because of the lead. Simply put, there is no allegation that the presence of lead in the lipstick had any observable economic consequence.

*Frye*, 583 F.Supp.2d at 958; *see also Herrington*, 2010 WL 3448531, at *4–5 (holding, based on analogous facts, that "Plaintiffs have not pled facts to show that Defendants' products are defective or otherwise unfit for use.... Plaintiffs have not alleged the loss of value of a durable good that they still own. Plaintiffs complain about a consumable good that they used to their benefit").

In this case, Plaintiffs have similarly failed to allege that the fruit juice products had any diminished value because of the presence of lead or that they would have purchased different or cheaper fruit juice products had they known about the lead. Plaintiffs' allegations only support the contention that the levels of lead in Defendants' products were unsatisfactory to them. This allegation is simply insufficient to support a claim for injury in fact.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs have failed to allege any injury in fact. Plaintiffs' lack of standing is fatal to all of their claims and, thus, the court need not address Defendants' remaining arguments for dismissal. Defendants' Motion to Dismiss (Dkt. No. 16) is hereby ALLOWED. Defendants' Motion Requesting Judicial Notice in Support of Motion to Dismiss (Dkt. No. 18) is hereby ALLOWED.

The clerk will enter judgment for Defendants. These cases may now be closed.

It is So Ordered.